644 A.2d 1164

### Alex ROMANIES, Appellee,

v.

### WORKMEN'S COMPENSATION APPEAL BOARD (BOROUGH OF LEESPORT), Appellant.

Supreme Court of Pennsylvania.

Submitted March 2, 1994.

Decided July 1, 1994.

---

David R. Beane, Reading, for appellant.

Anthony C. Busillo, Harrisburg, for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA,
PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

We granted allocatur to determine whether the harassing phone calls made by the mayor of the Borough of Leesport to Appellee, Alex Romanies, the borough's police chief, were sufficient to create abnormal working conditions which resulted in Appellee's psychiatric injury 534 Pa. 642, 626 A.2d 1159. Because there was no medical evidence that the harassing phone calls alone caused, or were a substantial contributing factor in causing Appellee's psychiatric problems, we now reverse.

Appellee filed a claim for workmen's compensation benefits alleging that he suffered a psychic injury as a result of continuous pressure and harassment from the mayor and borough counsel over a five-year period. When he was denied benefits, Appellee appealed and the referee held hearings. Thereafter, the referee denied benefits in a decision dated October 7, 1987, from which Appellee appealed to the Workmen's Compensation Appeal Board (Board). The Board vacated this decision and remanded the case because the referee presented summaries of testimony rather than findings of fact.

Another referee heard the case on remand and awarded benefits to Appellee from February 15, 1985, with the Borough of Leesport (Employer) to pay costs and medical expenses. In the April 17, 1991 decision, the referee, relying on Appellee's testimony, specifically found that the mayor ordered a number of changes in Appellee's terms and conditions of employment, and that the mayor had called Appellee several times at home and yelled at him. The referee further found that Appellee's medical witness, Dr. Wiswesser, was credible as to his opinion that Appellee's depression and anxiety were work-related. The referee concluded that Appellee suffered a psychic injury from abnormal working conditions. On appeal, the Board reversed, concluding that the referee's findings of fact did not support such a finding. Appellee then appealed to

the Commonwealth Court which reversed the Board's order and reinstated the referee's decision awarding workmen's compensation benefits to Appellee.

In an unreported opinion, a divided Commonwealth Court panel agreed with the Board and the referee that Appellee proved that he sustained psychiatric injuries through the objective evidence of his medical expert's testimony, Dr. Wiswesser, which the referee found credible. However, the court disagreed with the Board that Appellee failed to prove that his psychiatric injuries were caused by abnormal working conditions. Although the court found that the work changes, largely upon which Appellee based his claims were normal working conditions, the majority of the court reversed solely on the basis that the mayor had called Appellee several times at home to yell at him, and that behavior constituted an abnormal working condition. The court assumed that the Board's decision rested on the lack of evidence to corroborate the Claimant's testimony about the threatening phone calls from the mayor. Relying on *Archer v. Workmen's Compensation Appeal Board (General Motors)*, 138 Pa.Cmwlth. 309, 319, 587 A.2d 901, 906 (1991), the court again stated that it could find no support in the case law for requiring corroboration of harassment and mistreatment.

 The burden of proof faced by a claimant to recover workmen's compensation benefits for a psychiatric injury is two-fold: first it must be proven by objective evidence that the claimant suffered a psychiatric injury and then it must be demonstrated that such injury is other than a subjective reaction to normal working conditions. *Martin v. Ketchum*, 523 Pa. 509, 568 A.2d 159 (1990). However, unequivocal medical testimony is required to establish causation where the causal connection between the injury and the employment is not obvious. *Bell Telephone Company of Pennsylvania v. Workmen's Compensation Appeal Board (DeMay)*, 87 Pa. Cmwlth. 558, 487 A.2d 1053 (1985).

 There is no dispute that Appellee proved that he sustained psychiatric injury through the objective evidence of

the testimony of Dr. Wiswesser, Appellee's medical expert. While the Appellee satisfied the first prong of the *Martin* test, we now turn to an examination of the second prong of that test relative to the phone calls Appellee received from the mayor.

Appellant, Employer, argues that there was no medical evidence that the harassing phone calls alone caused, or were a substantial contributing factor in causing Appellee's psychiatric problems. Conversely, Appellee contends, based upon the totality of the record evidence which disclose instances of improper job-related interference, that as the result of Employer's pressure and harassment, he suffered a work-related injury due to abnormal working conditions. Appellee argues that the abnormal working conditions included the threatening telephone calls.

A review of the record, as Judge Pellegrini notes in his cogent dissent, reveals that the Appellee testified that the phone calls he received were only one of many factors, most of which were normal, that cause him stress. Similarly, Dr. Wiswesser did not testify specifically that the phone calls from the mayor had caused the Claimant's psychiatric injury but rather that the cumulative effect of both the normal work stress and phone calls were the cause of his condition. Dr. Wiswesser's testimony in pertinent part reveals the following:

Q. Doctor, can you state, with a reasonable degree of medical certainty, as to a diagnosis of Mr. Romanies' condition at this time?

A. I think there is a residual depressive component. I don't think the depression and anxiety have been resolved.

Q. Do you have an opinion, with a reasonable degree of medical certainty, as to whether the original diagnosis that you made as of February, 1985, was related to Mr. Romanies' employment as police chief?

A. I think it had a lot to do with it.

\* \* \* \* \* \*

Q. Now, Doctor, did you have a specific—or did Mr. Romanies complain of any specific basis or specific problems that he had at work upon which you base your opinion?

A. He, if I remember correctly, felt that the people above him were trying to undermine him. One example that comes back to me is that they hired a police officer who Mr. Romanies said had a history of seizures. He have [sic] another example of a police officer who violated standard procedures, for example, engaged in a pursuit without using a light or siren; had taken his shotgun out, in what Mr. Romanies felt was an inappropriate time. He felt the Mayor was not supporting him in that case. He complained about getting harassing phone calls. He felt his son was being unfairly deprived of vacation pay. I don't remember other specifics.

Q. Did Mr. Romanies report anything with regard to his mail at all?

A. Yeah. He told me that somebody had opened his mail. He was upset because the Mayor had punched his son.

RR. 164a–166a.

The record also reveals that the referee made the following specific findings of fact and conclusions of law relative to the phone calls and the abnormal working conditions:

### FINDINGS OF FACT

8. Mayor Sandridge would call the claimant at home and would yell at the claimant and order the claimant not to talk publicly concerning any of the claimant's concerns about the public's image of the police department's functions.

12. The Deposition of Dr. Wiswesser was presented by the claimant. Dr. Wiswesser was the claimant's attending psychiatrist. Dr. Wiswesser opined that the claimant exhibited no evidence of psychiatric disturbance at the time of claimant's initial evaluation of June 14, 1984 but that the claimant exhibited symptoms of clinical depres-

sion when seen in February 1985. Dr. Wiswesser's diagnosis was major affective disorder depressed with a mixture of anxiety and stress. Dr. Wiswesser opined that the claimant's condition was work-related and caused by claimant's employment and that the claimant was totally disabled.

15. After a review of the testimony and medical opinions in the record the Referee finds that Claimant suffered a work related injury brought about by the stress which was due to the abnormal working conditions placed upon the claimant by the defendant.

16. This Referee accepts as credible the testimony of the claimant and the medical opinion of Dr. Wiswesser as credible.

### CONCLUSIONS OF LAW

1. The parties are bound by the provisions of the Pennsylvania Workmen's Compensation Act.

2. There was legal, competent, substantial and credible evidence in the record that the claimant suffered a psychiatric injury incurred by the claimant's work conditions and claimant is due total disability benefits from February 15, 1985.

3. There was legal, competent, substantial and credible evidence in the record that not only did the claimant's condition become abnormal but the intensity of stress associated with the claimant's duties increased due to the changes made by the mayor. (See *City of Scranton v. WCAB (Hart)*, 528 Pa. 625, 597 A.2d 1154 (1991).)

4. Defendant is directed to pay all reasonable and necessary medical expense and costs which the claimant incurred in the treatment of his work related injury as well as all costs in the presentation of claimant's claim upon presentation to the defendant for payment.

RR. 20a–22a.

The causal connection between the Appellee's psychological injury and the telephone calls he received from the mayor is

not obvious from this record. Furthermore, there was no medical evidence presented that the harassing phone calls alone caused or were a substantial contributing factor in causing Appellee's psychological injury. This fact is underscored by the fact that the referee did not specifically find that the phone calls were an abnormal working condition or the sole cause of Appellee's psychiatric injury. For these reasons, we now reverse.

The order of the Commonwealth Court is reversed.

MONTEMURO, J., is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1801, due to the unavailability of LARSEN, J., see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.