ERIE BOLT CORPORATION and
Zurich Insurance Group,
Petitioners,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (ELDERKIN),
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 12, 1997.
Decided Feb. 5, 1998.
Publication Ordered May 30, 2001.

Raymond F. Keisling, Carnegie, for petitioners.

Joseph B. Steele, Erie, for respondent.

Before DAN PELLEGRINI, Judge, JAMES R. KELLEY, Judge, EMIL E. NARICK, Senior Judge.

KELLEY, Judge.

Erie Bolt Corporation (employer) appeals from an order of the Workers' Compensation Appeal Board which affirmed a decision of the workers' compensation judge (WCJ) granting a fatal claim petition filed by Patricia Elderkin (claimant). We affirm.

On or about December 10, 1992, claimant filed a fatal claim petition alleging that her husband, Perry W. Elderkin (decedent) suffered a fatal heart attack on March 2, 1990 following his discharge from employment with employer. Claimant alleged further that job-related stress caused decedent's heart attack. Employer filed a timely answer. Hearings before a WCJ ensued.[1]

In support of the fatal claim petition, claimant testified and presented the deposition testimony of: (1) Norman Strandwitz, employer's Vice President of Marketing; (2) H.E. Brown, employer's President; (3) John Eckberg, M.D.; and (4) Nancy L. Mramor, Ph.D.

Mr. Strandwitz testified regarding decedent's employment with employer. Mr. Strandwitz testified that the decedent was promoted to engineering and remained in that position until approximately one year before his death. Mr. Strandwitz testified that there was a change in management and that management was convinced that the decedent was not the right person for the engineering job. Therefore, according to Mr. Strandwitz, a computer position was created for the decedent because he had aptitude in that area and management felt obliged to make accommodations for the decedent, because his father was one of the principal stockholders in the company.

Mr. Strandwitz testified further that he had complained about the quality of decedent's work but that he had never attempted to have the decedent fired. In addition, Mr. Strandwitz testified that the decedent was very difficult to deal with and had a difficult time adjusting his priorities in response to the needs of the sales department. Mr. Strandwitz testified that he was not present at the March 2, 1990 meeting at which the decedent was fired but that he knew the meeting was scheduled. The WCJ found the testimony of Mr. Strandwitz credible.

Mr. Brown also testified regarding decedent's employment with employer. Mr. Brown testified that he spoke with the decedent about trying to cooperate more with co-workers and that the decedent was making an effort in that direction. Nevertheless, Mr. Brown testified that approximately two months before action was taken, it was determined that the decedent would have to be terminated from his employment. Mr. Brown testified that steps were taken to obtain other employment for the decedent with another employer but that the decedent indicated that he was not interested. Mr. Brown testified that he did not advise the decedent that he would be terminated if the decedent did not take the other job, but that he did advise the decedent that there was a chance that the decedent's job may be eliminated.

---

1. Following hearings, the taking of testimony, and the making of a record before WCJ Wehan, the case was reassigned to WCJ Jones without objection or request for additional hearing by the parties.

Mr. Brown testified further that he met with the decedent on March 2, 1990 and advised the decedent that he was terminated. Mr. Brown testified that the decedent made no verbal response to the news of his termination. The WCJ found credible and accepted as fact, Mr. Brown's description regarding the decedent's shortcomings in the performance of his duties both in engineering and in the computer position, as well as the extensive accommodations that management attempted to make for the decedent.

Dr. Eckberg testified that the repeated stress and tension that the decedent was under and, in particular, the sudden shock at the time that he was told his job was terminated, was a substantial contributing factor in the development of the decedent's fatal heart attack. Dr. Mramor, a psychologist, testified regarding the decedent's personality and behavioral characteristics and the impact that these would have upon the decedent's reaction to his termination. Employer's objection to Dr. Mramor's testimony as having absolutely no basis or foundation was overruled by the WCJ.

In opposition to the fatal claim petition, employer presented the deposition testimony of Cyril H. Wecht, M.D. Dr. Wecht testified that the decedent's work history did not have a causal relationship with the decedent's fatal heart attack. Dr. Wecht opined that the decedent's termination from employment was not an abrupt, precipitous and unanticipated dismissal or done in a fashion which caught the decedent by surprise. Therefore, Dr. Wecht testified that the termination was not of such a substantial degree of stress that it would have precipitated a heart attack in and of itself.

Dr. Wecht testified that he believed that stress can be a substantial contributing factor in a heart attack, but that an episode must be able to be identified as a significant source of acute stress in order to be causally related as a factor in a heart attack. Dr. Wecht testified that he did not believe that the circumstances of the decedent's termination were manifested by a hostile environment or an ugly scene and that, therefore, the stress of the termination was insufficient to amount to a significant contributing factor in the decedent's fatal heart attack.

Based on the testimony presented, the WCJ found as follows:

12. It is found as a fact that the [decedent] suffered his fatal heart attack within approximately one hour of being advised of his dismissal from employment. This finding is based upon the fact that the meeting with the decedent was held at approximately 4:30 in the afternoon and that [decedent] was admitted to the hospital at 5:45 p.m.

* * *

14. It is found as a fact that the circumstances of the [decedent's] dismissal from employment constituted a sufficient stressor to have contributed significantly to the onset of [decedent's] fatal heart attack. In reaching this finding, I have found that the testimony of Mr. Strandwitz and Mr. Brown is credible and that the opinions of Dr. Eckberg and Dr. Mramor are credible and persuasive. It is noted in addition, that the bulk of Dr. Wecht's testimony was entirely credible and believable. The only aspect of Dr. Wecht's testimony that I find to be less credible that the testimony of Dr. Eckberg and Dr. Mramor is that portion of his testimony where Dr. Wecht felt that the decedent had insufficient stress as a result of his dismissal to have that event considered a significant contributing factor in the onset of his fatal heart attack.

Dr. Eckberg's opinion that the acute stress of being fired was a significant contributing factor to the onset of claimant's fatal heart attack is accepted as the most credible medical evidence of record and is found as fact. Dr. Eckberg's opinion that repeated, chronic stress for the last two years of decedent's employment was a significant contributing factor to the decedent's fatal heart attack is rejected as less credible than the opinion of Dr. Wecht on that issue.

Dr. Mramor's description of decedent's personality and behavioral characteristics and the impact that these would have upon his reaction to his termination to employment supports the opinion of Dr. Eckberg and is found to be credible and is accepted as fact.

Based upon the credible testimony of Mr. Strandwitz and Mr. Brown, it is found as a fact that the employer acted in a most reasonable and accommodating fashion in dealing with the decedent, but that does not alter the fact that the [decedent] suffered an acute episode of stress upon learning of his termination of employment and that this acute stressful incident was a significant contributing factor in the onset of his fatal heart attack.

Based on the findings, the WCJ concluded that claimant had met her burden of proof to show that a stressful incident at work was a substantial contributing factor in the onset of the decedent's fatal heart attack. Accordingly, the WCJ granted claimant's petition and awarded fatal claim benefits.

Employer appealed to the board, which affirmed the WCJ's decision. This appeal followed.

On appeal to this court, employer raises two issues: (1) whether the WCJ's decision is supported by substantial evidence; and (2) whether the WCJ's reliance on the testimony of a psychologist who gave a medical opinion that the decedent was in shock when there was not a proper foundation or basis for such a conclusion was correct.

Initially, we note that this court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mrs. Smith's Frozen Foods v. Workmen's Compensation Appeal Board (Clouser)*, 114 Pa. Cmwlth.382, 539 A.2d 11 (1988).

With respect to a petition for fatal claim benefits, the claimant bears the burden of proving that the decedent suffered an injury arising in the course of employment and that the decedent's death was causally related to that work injury. *Whelan v. Workmen's Compensation Appeal Board (F.H. Sparks Co. of Pennsylvania)*, 110 Pa.Cmwlth.242, 532 A.2d 65 (1987). Where there is no obvious causal connection between an injury and the alleged cause, that connection must be established by unequivocal medical testimony. *Kraushaar v. Workmen's Compensation Appeal Board (Doors, Inc.)*, 142 Pa.Cmwlth.69, 596 A.2d 1233 (1991).

The WCJ, as the ultimate fact finder in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole

or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa.Cmwlth.461, 593 A.2d 921, *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991).

■ With respect to the first issue, employer contends that the WCJ's decision is not supported by substantial, competent and credible medical testimony and, therefore, should be reversed. Employer argues that the evidence of record does not support the WCJ's finding that the acute stress of being fired was a significant contributing factor to the onset of the decedent's fatal heart attack. Employer contends that at no time did claimant's expert medical witness, Dr. Eckberg, testify that the decedent's dismissal from employment in and of itself constituted a sufficient stressor to have contributed significantly to the onset of claimant's fatal heart attack. Employer argues that Dr. Eckberg testified that the chronic stress coupled with the firing was a contributing factor in the development of the fatal heart attack and that Dr. Eckberg never separated the employment termination from the alleged chronic stress.

Contrary to employer's assertions, a review of Dr. Eckberg's entire testimony supports the WCJ's finding that the acute stress of being terminated was a significant contributing factor to the onset of decedent's fatal heart attack. Employer is simply focusing on, and narrowly construing, one statement of Dr. Eckberg's and ignoring the rest of the testimony. Dr. Eckberg testified as follows:

Well, my opinion is that there was no doubt whatsoever in my mind that the repeated stress and tension and particularly the sudden shock at the time he was told that his job was terminated on the afternoon of March 2nd of 1990 in the development, or the triggering of the development and the development of

a major and substantial contributing factor in the development of his fatal heart attack.

Reproduced Record (R.) at 143a–44a.

When specifically questioned regarding the chronic stress suffered by the decedent and the acute stress circumstance of the decedent's termination, Dr. Eckberg testified as follows:

Q. I don't mean to put words in your mouth here, but as I understand your testimony, or as I followed it, there were apparently two correlative circumstances here; there was the chronic stress circumstance and then an acute stress circumstance, is that a correct statement?

A. Yes.

Q. And would you describe from a medical point of view what occurred at the acute point of view, at the acute occurrence? What medically occurred? How did stress relate to his having a heart attack at that point in time?

A. Well, I mean according to the review of the literature, what happens at a time like this is that due to the excessive excretion of noradrenaline or catecholine type hormones, there is an increase in the heart rate, also an increase in the myocardial oxygen demand and there's also an increase in the stress and the resistance of the coronary arteries. And in addition to this there is believed to be an increase in platelet aggravation and all these facts would make it much more likely for a person to develop a myocardial infarction if the episode is prolonged . . . .

Q. Now, do you believe that that's what occurred in Perry Elderkin's case?

A. Yes, I do . . . .

* * *

Q. And again, Doctor, just to complete my questioning, do you hold the opinion within the realm of reasonable medical certainty that the occasion of Mr. Elderkin's termination, that work circumstance was a substantial contributing factor in the triggering of his heart attack?

A. Yes, I do. . . .

R. at 156a–57a; 159a.

We recognize that the WCJ rejected Dr. Eckberg's opinion that chronic stress significantly contributed to the onset of decedent's fatal heart attack. However, Dr. Eckberg's testimony, as reflected above, shows that Dr. Eckberg did consider the decedent's termination in and of itself a significant contributing factor to the onset of the decedent's fatal heart attack. We remind employer that the WCJ's acceptance in part and rejection in part of Dr. Eckberg's testimony was well within the province of the WCJ. Accordingly, we conclude that the WCJ's finding, based on Dr. Eckberg's testimony, that the acute stress of being fired was a significant contributing factor to the onset of the decedent's fatal heart attack, is supported by substantial evidence.

The order of the board is affirmed.[2]

### ORDER

AND NOW, this 5th day of February, 1998, the order of the Workers' Compensation Appeal Board, dated June 18, 1997, at No. A96–0028, is affirmed.

---

**2.** Based on our resolution of the first issue raised herein, we need not address the second issue raised by employer.