888 A.2d 724

**Russell T. PANYKO, Appellant**

v.

**WORKERS' COMPENSATION APPEAL BOARD (U.S.AIRWAYS), Appellees.**

Supreme Court of Pennsylvania.

Argued March 7, 2005.

Decided Dec. 28, 2005.

---

312

Sandra Weigel Kokal, James R. Burn, Pittsburgh, for Russell T. Panyko.

Lawrence R. Chaban, for Pennsylvania Trial Lawyers Association.

James A. Holzman, Amber Marie Lengler, Richard C. Lengler, Harrisburg, for Workers' Compensation Appeal Board.

Kimberly Anne Zabroski, Pittsburg, for US Airways.

Before CAPPY, C.J., NIGRO, NEWMAN, SAYLOR, EAKIN, BAER, JJ.

## *OPINION OF THE COURT*

Justice NIGRO.

Appellant Russell T. Panyko ("Claimant") appeals from the Commonwealth Court's order which affirmed the order of the Workers' Compensation Appeal Board (the "Board") denying Claimant's claim petition. We now reverse.

On November 17, 1997, Claimant filed a claim petition seeking various benefits for a heart attack he suffered on February 5, 1997, during a meeting with one of his supervisors.[1] Claimant's employer, U.S. Airways, filed an answer to the petition, in which it denied that Claimant's heart attack was "work-related."

---

1. Claimant sought: (1) payment for the wages he lost while he was out of work due to the heart attack; (2) payment for his medical bills; and (3) counsel fees.

During a hearing before a workers' compensation judge ("WCJ") on January 13, 1998, Claimant testified that he had been employed by U.S. Airways as a baggage handler for fifteen years. He explained that in July 1995, he suffered a heart attack and underwent a triple bypass. Shortly after the surgery, he returned to work and he did not miss any additional work days until May of 1996, when he was out for two days due to chest pains. Over six months later, in January of 1997, Claimant missed another two days because of chest pains. According to Claimant, other than the above four absences, he had a good attendance record.

With respect to the events of February 5, 1997, Claimant testified that on that date, his supervisor told him that Gene Egan, his attendance manager, wanted to speak with him. He was upset about having to attend the meeting because he felt that he had a good attendance record. Later that afternoon, Claimant and his union steward met with Egan and Egan told them that Claimant had incurred four "occurrences," meaning that he had missed four days of work when he was scheduled to be at work.[2] Egan informed Claimant that if he incurred another "occurrence," he would be placed on level one, which was a type of disciplinary status.

Claimant stated that he questioned Egan about why one of his May 1996 absences had been deemed an "occurrence," and Egan replied that it had been designated as such, because he said so.[3] Egan then apparently told Claimant that he was going to "write him up" for his attitude. At that point, Claimant felt chest pains. Egan suggested that Claimant take a walk and come back once he had calmed down, but Claimant refused. Egan then offered Claimant a Family Leave Plan, pursuant to which Claimant could incur "occurrences" due to his heart problems without disciplinary repercussions. Claimant completed the paperwork for the plan and thanked Egan.

**2.** Claimant explained that pursuant to U.S. Airways' policy, an employee was required to attend an "initial meeting" with Egan if he incurred four "occurrences." WCJ Hearing, 1/13/98, at 16.

**3.** Claimant contended that the initial May absence should not have been treated as an "occurrence" because he had gone to work on that day, but had to leave because of sharp chest pains.

As he left the meeting, Claimant felt pain in his back, neck, and shoulder, and asked his union steward to take him to the hospital, where it was determined that he was suffering from a heart attack.

Claimant testified that a few days after his heart attack, he told one of his administrators about the attack and asked her if it was covered by workers' compensation, to which she replied that it was not. Claimant stated that he later informed this same administrator that he needed to take off thirty days due to his heart attack, and at that time, she again told him that his attack was not covered by workers' compensation. In July or August 1997, one of Claimant's co-workers gave him a book about workers' compensation. After reading the section on heart attacks, Claimant realized that his heart attack may have been related to his meeting with Egan and thereby covered by workers' compensation. Therefore, in August 1997, Claimant went to see Egan to file a work injury report.

In support of his petition for benefits, Claimant also offered a letter from his doctor, Stephen Osmanski, M.D., in which Dr. Osmanski opined that "the confrontation [between Egan and Claimant on February 5th] directly did contribute to [Claimant's] heart attack, causing him to be disabled from work for the thirty day recovery period." 10/10/1997 Letter from Dr. Osmanski to James Burn, Jr.

U.S. Airways subsequently offered testimony from Egan in its defense. According to Egan, as manager of attendance control, he routinely had "initial discussions" with employees when they incurred four "occurrences."[4] WCJ Hearing, 4/28/1998, at 7–10. He recalled that during his February 5th meeting with Claimant, Claimant "appeared to be extremely upset and angry and irritated at the fact that he had to come to my office and discuss his attendance," because he "was

4. Egan explained that the initial discussion was not a disciplinary meeting, but simply "a discussion that's documented in writing to make the employee aware that he or she has four occurrences[,] to cover what the Attendance Control Policy is all about, and to discuss [the] Family and Medical Leave." WCJ Hearing, 4/28/1998, at 8.

angrily speaking ... with his teeth clinched, and his hands were shaking." *Id.* at 14. Egan testified that he let Claimant "vent" for a few minutes and then told him that he was acting disrespectfully and would be disciplined if his conduct continued. *Id.* at 15. Egan also suggested that Claimant leave and calm down.

Egan stated that Claimant decided to remain in his office and the two went over Claimant's occurrences, with Claimant disputing the designation of his initial May absence as an "occurrence." Egan then offered Claimant the Family Medical Leave Plan and after completing some paperwork, Claimant left Egan's office. Egan testified that he did not know that Claimant was having physical difficulties during the meeting. While he later learned of Claimant's heart attack, he testified that he did not know that it was related to his meeting with Claimant until Claimant approached him in August 1997 to file a work injury report.

On February 10, 1999, the WCJ entered an order granting Claimant's claim petition and request for counsel fees.[5] In response to U.S. Airways' claim that Claimant had failed to notify it of his injury within 120 days of his heart attack, as required by 77 P.S. § 631, the WCJ pointed out that the statutory notification period does not begin to run until a claimant either "knows or by reasonable diligence should know of the possible connection between an injury and work." *Panyko v. U.S. Airways*, WCJ Decision, 2/10/1999, at 6 (citing to 77 P.S. § 631). The WCJ then found that the notification period for Claimant's heart attack did not begin to run until July 1997 because "[Claimant] clearly and unequivocally testified that he was not aware of such a possible connection until he read the workers' compensation handbook in July of 1997." *Id.* Moreover, given that start date, the WCJ concluded that Claimant properly notified U.S. Airways of his injury in August 1997.

5. The WCJ had previously entered an order granting Claimant's claim petition and request for counsel fees on October 13, 1998. However, on November 4, 1998, the WCJ vacated that decision and relisted the case to consider U.S. Airways' brief.

The WCJ further found that Claimant credibly testified that his February 5th heart attack occurred during his meeting with Egan.[6] In addition, the WCJ accepted Dr. Osmanski's opinion that the meeting directly contributed to Claimant's heart attack and therefore awarded Claimant benefits, stating that Claimant had met his burden of proving that "he suffered an injury which arose in the course of his employment and that it was related thereto." *Id.* at 7. The WCJ then awarded Claimant counsel fees, finding that U.S. Airways did not have a reasonable basis for contesting Claimant's petition as it had not produced any evidence to rebut Claimant's assertions that his heart attack was related to the attendance meeting.

On appeal, the Board affirmed in part and reversed in part. The Board affirmed the WCJ's conclusion that Claimant's notification was timely as well as the WCJ's conclusion that Claimant was entitled to benefits, finding that both conclusions were supported by substantial evidence. However, the Board reversed the WCJ's award of counsel fees to Claimant, finding that U.S. Airways reasonably contested Claimant's petition based on his failure to notify it of his claim within 120 days of his heart attack because "the legal question of notice needed to be resolved." *Panyko v. U.S. Airways,* Board Decision, 10/11/2000, at 9.

U.S. Airways subsequently appealed to the Commonwealth Court, which affirmed the Board's conclusion that Claimant provided U.S. Airways with timely notice, but vacated the Board's conclusion that Claimant was entitled to benefits. *See U.S. Airways v. Workers' Comp. Appeal Bd. (Panyko),* 779 A.2d 1233 (Pa.Commw.2001). The Commonwealth Court explained that in *Davis v. Workers' Comp. Appeal Bd. (Swarthmore Borough),* 561 Pa.462, 751 A.2d 168 (2000), this Court held that where a claimant seeks benefits for a physical injury, such as a heart attack, caused by a psychic reaction to a working condition, such as stress, the claimant must prove not only that the psychic reaction caused the injury, but also that the working condition that caused the psychic reaction was

6. The WCJ also found that Egan's testimony corroborated Claimant's testimony in this respect.

abnormal. *See U.S. Airways*, 779 A.2d at 1239. Accordingly, relying on *Davis*, the court held that Claimant was required to prove that the psychic reaction that caused his heart attack on February 5th was the result of abnormal working conditions. However, the court pointed out that "because this prong of Claimant's burden was not addressed by the WCJ, there are no specific findings in this regard." *Id.* Therefore, the court vacated the Board's order granting Claimant benefits and remanded the matter to the Board "for further remand to the WCJ for findings in accordance with Claimant's burden of proof as set forth by . . . *Davis*." *Id.*

On remand, the WCJ held additional hearings during which both Claimant and Egan testified on the issue of whether the February 5th meeting was an abnormal working condition. Claimant testified that during the meeting, Egan was loud, harassing, and unprofessional. *See* WCJ Hearing, 12/4/2001, at 7–9. Moreover, he stated that he felt that his life was in danger when Egan threatened to "write him up" for his attitude. *See id.* at 24. As in his previous testimony, Egan testified that his February 5th meeting with Claimant was a routine procedure. *See* WCJ Hearing, 1/29/2002, at 18–19. Indeed, he stated it was one of six he had scheduled for that day. *See id.* at 26, 751 A.2d 168. Egan also denied Claimant's assertions that he was loud, harassing, and unprofessional at the meeting, stating that instead, it was Claimant who was angry and disrespectful. *See id.* at 19–28.

On May 28, 2002, the WCJ entered a decision denying and dismissing Claimant's claim petition. The WCJ initially determined that the February 5th meeting was a standard meeting required by U.S. Airways' corporate policy. The WCJ further found "[C]laimant's representation that Mr. Egan placed his life in danger to be unpersuasive." WCJ Decision, 5/28/2002, at 9. Although the WCJ accepted Claimant's testimony that Egan was unprofessional and disrespectful during the meeting, he determined that such conduct did not make the meeting an abnormal working condition. Accordingly, the WCJ denied Claimant's petition, stating that Claimant had "failed to meet his burden of establishing that he was subjected to

abnormal working conditions on February 5, 1997." [7]  *Id.* at 8. The Board affirmed the WCJ's decision and the Commonwealth Court subsequently affirmed.

In his appeal to this Court, Claimant essentially argues that the Commonwealth Court erroneously interpreted this Court's decision in *Davis* to require a claimant who suffered a purely physical injury, such as a heart attack, as a result of a psychic reaction to a working condition to prove that the working condition was abnormal. According to Claimant, the *Davis* court only held that a claimant must satisfy the abnormal working conditions test where the claimant suffered from a *"psychic"* injury with related physical symptoms. Moreover, Claimant asserts that the Commonwealth Court's application of the abnormal working conditions test to cases where a claimant suffers a purely physical injury is an unfair expansion of the Workers' Compensation Act, 77 P.S. §§ 1–1041.1 (the "Act"),[8] as it defeats the humanitarian purposes of the Act. We agree with Claimant that this Court's decision in *Davis* should be read narrowly, so as not to require a claimant to meet the restrictive abnormal working conditions test in situations where he suffers a purely physical injury such as a heart attack.

"In workers' compensation appeals, this Court must affirm the adjudication below unless we find that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed or that any necessary finding of fact is not supported by substantial evidence of record." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transport)*, 574 Pa.61, 828 A.2d 1043, 1046 (2003); *see also* 2 Pa.C.S. § 704. The primary issue that we are asked to decide here, *i.e.,* whether

---

**7.** In spite of his ruling, the WCJ noted that he agreed with Claimant "that the restrictive abnormal working conditions rule has been unfairly extended to mental-physical cases" such as Claimant's. WCJ Decision, 5/28/2002, at 11. Indeed, the WCJ respectfully requested the appellate courts to reconsider the application of this rule to mental-physical cases.

**8.** Act of June 2, 1915, P.L. 736.

the Commonwealth Court erroneously required Claimant to establish that his heart attack was due to an abnormal working question, is solely a legal question. Thus, our review is de novo and we may consider the entire record. *See Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850, 857 n. 3 (2005).

Prior to 1972, the Act required employers to compensate employees "only if the employee was injured or killed by an 'accident' occurring in the course of employment." *Workmen's Comp. Appeal Bd. v. Bernard S. Pincus Co.*, 479 Pa. 286, 388 A.2d 659, 661 (1978). It also "defined 'injury' to require 'violence to the physical structure of the body.'" *Id.* (citing 77 P.S. § 411 (amended 1979)). Based on this limited definition, our courts found that only physical injuries qualified as compensable injuries under the Act. *See, e.g., University of Pittsburgh v. Workmen's Comp. Appeal Bd.*, 49 Pa. Cmwlth. 347, 405 A.2d 1048, 1051 (1979).

In 1972, however, the General Assembly amended the Act to make employers "liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment." 77 P.S. § 431. Moreover, the General Assembly changed the definition of the term "injury" to define that term as "an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto." *Id.* § 411. The Commonwealth Court subsequently determined that the General Assembly intended mental or psychic injuries to be included as compensable injuries under the newly amended Act because it eliminated the requirement that an injury include "violence to the physical structure of the body." *See University of Pittsburgh*, 405 A.2d at 1050.

However, shortly after it issued the above decision, the Commonwealth Court determined that due to the "highly subjective nature of psychiatric injuries, the occurrence of the injury and its cause must be adequately pinpointed." *Thomas v. Workmen's Comp. Appeal Bd.*, 55 Pa.Cmwlth. 449, 423 A.2d 784, 787 (1980). The court explained that an injury could not be compensable under the Act if it was simply the result of "an employee's subjective reaction to being at work and being

exposed to normal working conditions." *Id.* at 788. Accordingly, the court held that a claimant could only obtain benefits for a psychic injury if he showed that his injury was either more than a subjective reaction to normal working conditions or caused by abnormal working conditions, *i.e.*, the abnormal working conditions test. *See id.* at 787; *see also Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159, 164–65 (1990). This Court subsequently agreed with the Commonwealth Court's reasoning and thereby upheld the abnormal working conditions test for psychic injuries, stating:

> Abandoning the distinction between normal and abnormal working conditions, as the Appellant urges us to do, would eliminate the element of causation. It would destroy the fundamental principle underlying the scheme of the Workmen's Compensation Act—that, in order to be compensable, an injury must be work-related. Under the Appellant's theory, a claimant would have to establish only that the employee suffered from a mental illness while employed and that the illness was a condition created or aggravated by that employee's perception of the conditions of his employment. That would reduce workmen's compensation benefits to nothing more than a disability or death benefit payable only because of the employee status of the claimant—and not because the injury was caused by his employment.

*Davis*, 751 A.2d at 174.

Therefore, based on *Martin*, a claimant seeking benefits for psychic injuries caused by a psychic stimulus was required to prove that: (1) he suffered from a psychic injury; and (2) his psychic injury was either more than a subjective reaction to normal working conditions or caused by abnormal working conditions. *See Ryan v. Workers' Comp. Appeal Bd. (Community Health Services)*, 550 Pa.550, 707 A.2d 1130, 1135 (1998); *Hershey Chocolate Co. v. Commonwealth*, 546 Pa. 27, 682 A.2d 1257, 1260 (1996). In contrast, a claimant seeking benefits for any other type of injury only had to show that: (1) he suffered from such an injury; and (2) "the injury arose in

the course of employment and was related thereto."[9] *Krawchuk v. Phila. Electric Co.*, 497 Pa. 115, 439 A.2d 627, 630 (1981); *see also* 77 P.S. § 411; *Whiteside v. Workers' Comp. Appeal Bd. (Unisys Corp.)*, 168 Pa.Cmwlth. 488, 650 A.2d 1202, 1205–07 (1994).

Some time after *Martin*, this Court granted allocatur in *Davis* to address the issue of whether the abnormal working conditions test applied to a claimant who allegedly suffered from a psychic injury with related physical symptoms. *See* 751 A.2d at 174. There, the claimant, James Davis, filed a claim petition seeking benefits for certain psychic injuries, namely, post-traumatic stress disorder and specific work inhibition, which he claimed were caused by "repeated stressful and life-threatening experiences during the course of his duties as a police officer." *Id.* at 169. Davis also alleged that his psychic injuries included physical symptoms, such as shortness of breath, uncontrollable hand shaking, and general muscle twitching with aches and pains. *See id.* at 172. The WCJ awarded Davis benefits, finding that he had sufficiently established that he suffered from a "bona-fide psychiatric illness," which was caused by abnormal working conditions. *Id.* at 173. The Board, however, reversed, explaining that Davis' "working conditions were not unusually stressful for police work." *Id.*

On further appeal, the Commonwealth Court reversed the Board, holding that because Davis showed that he suffered from physical symptoms along with his psychic injury, he was not required to prove that his injuries were the result of abnormal working conditions. Instead, the court held that Davis "was required to prove only that the psychological stress of normal working conditions caused a physical injury." *Id.* at 174. This Court, however, reversed the Commonwealth

9. The other types of injuries include: (1) physical/physical injuries, where a physical stimulus causes a physical injury; (2) psychic/physical injuries, where a psychic stimulus causes a physical injury; and (3) physical/psychic, where a physical stimulus causes a psychic injury. *See Katz v. Evening Bulletin*, 485 Pa. 536, 403 A.2d 518, 519 (1979) (example of physical/physical injury); *Ryan*, 707 A.2d at 1133–34 (identifying and giving examples of other two types of injuries).

Court, essentially finding that a psychic injury did not become a physical injury simply because it included physical symptoms. *See id.* at 177 ("[I]t is the nature of the injury asserted, not the presence or absence of physical symptoms that is controlling."). Accordingly, this Court held that because Davis' injuries were unquestionably psychic in nature, with simply *related* physical symptoms, Davis had to meet the abnormal working conditions test and the Board correctly determined that the evidence submitted by Davis did not satisfy that test. *See id.*

As explained above, the Commonwealth Court in the instant case relied on *Davis* in finding that Claimant was required to meet the abnormal working conditions test to obtain benefits for his heart attack. According to the Commonwealth Court, the *Davis* court held that whenever a claimant suffers an injury, whether it be psychic or physical, as a result of a psychic reaction to a working condition, the claimant must show that the working condition was abnormal. However, contrary to the Commonwealth Court's conclusion, we now hold that, given the facts of *Davis,* that case only stands for the proposition that where a claimant suffers a *psychic* injury with attendant physical symptoms, the claimant must meet the abnormal working relations test. *See Davis,* 751 A.2d at 170 ("We hold that where a *psychic* injury is claimed, regardless of whether it is manifested through psychic symptoms alone or physical symptoms as well, the claimant must establish that the injury arose from abnormal working conditions in order to recover benefits.") (emphasis added); *id.* at 174; *id.* at 176; *id.* at 177. Indeed, given the facts before it, the *Davis* court simply did not resolve the completely separate question of whether a claimant must satisfy the abnormal working conditions test when seeking benefits for a purely physical injury, such as a heart attack, caused by a psychic reaction to a working condition.

Moreover, this Court refuses to take this case as an opportunity to expand the abnormal working conditions test to situations where a claimant suffers a purely physical injury

due to a psychic reaction to a working condition.[10]   In the first instance, we note that the concerns that caused this Court to adopt the abnormal working conditions test in cases where a claimant suffers a psychic injury are not present in cases where a claimant suffers a purely physical injury, such as a heart attack, angina, or colitis.   Indeed, unlike psychic injuries, purely physical injuries are usually objectively verifiable and can ordinarily be traced to an identifiable source.   Thus, a physical injury's relationship to the workplace is easier to discern than that of a psychic injury, which, by its nature, is inherently subjective.   *Compare Krawchuk*, 439 A.2d at 628–29 (evidence showed that decedent was working and under heavy stress at time he suffered his heart attack), *with Thomas*, 423 A.2d at 787 (evidence was unclear as to whether claimant's psychic injury in 1975 was related to work-related events years earlier).   Further, given the objective nature of physical injuries, they are less likely than psychic injuries to be either subject to manipulation or simply the result of a "subjective reaction to normal working conditions." *Davis*, 751 A.2d at 177.

Accordingly, we do not believe that it is necessary to require claimants allegedly suffering from physical injuries to show that their injuries are the result of abnormal working conditions.   Rather, such claimants need only show that (1) they are suffering from an objectively verifiable physical injury;  and (2) "the injury arose in the course of employment and was related thereto." *Krawchuk*, 439 A.2d at 630.   Moreover, as we find that the evidence was sufficient to support the WCJ's initial determination that Claimant met the above

10.   The Commonwealth Court found that this Court expanded the abnormal working conditions test to cases in which a claimant allegedly suffers from a psychic/physical injury by means of our per curiam order in *Erie Bolt Corp. v. Workers' Comp. Appeal Bd. (Elderkin)*, 562 Pa.175, 753 A.2d 1289 (2000), which reversed the order of the Superior Court based on *Davis*.   However, our current recognition that *Davis* did not address psychic/physical injuries makes plain that our mere citation to *Davis* in *Erie Bolt* could not have expanded the abnormal working conditions test to cover such injuries.   *See Commonwealth v. Smith*, 575 Pa. 203, 836 A.2d 5, 17 (2003) (although an unexplained per curiam reversal establishes the law of the case, "by definition it establishes no precedent beyond the authority cited in the order.")

burden, we reverse the Commonwealth Court's order denying Claimant's claim petition.

Chief Justice CAPPY and Justice EAKIN and BAER join the opinion.

Justice CASTILLE did not participate in the consideration or decision of this case.

Justice SAYLOR files a concurring opinion.

Justice NEWMAN files a dissenting opinion.

Justice SAYLOR, Concurring.

I agree with the majority that the abnormal working conditions requirement should not extend to situations in which a claimant suffers a physical injury, such as a heart attack, as a result of a psychic or mental stimulus arising in the work environment. Indeed, when the General Assembly amended the Workers' Compensation Act in 1972 to eliminate the requirement of an accident by substituting the substantially broader concept of a work-related injury, it sought, *inter alia,* to abolish a series of complex doctrines that had required claimants to demonstrate a close association between heart attacks and specific work conditions to support a workers' compensation award. *See generally WCAB (Squillacioti) v. Bernard S. Pincus Co.,* 479 Pa. 286, 292–95, 388 A.2d 659, 661–63 (1978). Thus, the extension of the abnormal working conditions requirement into this arena has contravened the Legislature's express purposes in this regard.

That said, I respectfully differ with the majority's approach to the *per curiam* Order in *Erie Bolt Corp. v. WCAB (Elderkin),* 562 Pa. 175, 753 A.2d 1289 (2000), which heralded the undue extension of the abnormal working conditions requirement. The majority appears to consider the *Elderkin* Order as being in the nature of an unexplained, *per curiam* disposition that should not have been applied as binding precedent by the Commonwealth Court. *See* Majority Opinion, at 323 n. 10, 888 A.2d at 732 n. 10. The difficulty with such treatment, however, is that it fails to attach due significance to the fact

that the *Elderkin* Order affirmatively furnished the Court's rationale for the disposition by way of an express citation to *Davis v. WCAB (Swarthmore Borough)*, 561 Pa. 462, 751 A.2d 168 (2000). As the underlying decision of the Commonwealth Court in *Elderkin* was published, *see Erie Bolt Corp. v. WCAB (Elderkin)*, 777 A.2d 1169 (Pa.Cmwlth.1998), and concerned solely the question of whether the claimant satisfied her burden of proof for a fatal claim petition involving a heart attack that was attributed to work-related stress, this Court's citation to *Davis* could only be construed, as it has been by the Commonwealth Court, as extending the abnormal working conditions construct to mental/physical claims involving heart attacks.

In these circumstances, I believe that the Court should expressly recognize that the mistake involved here was ours and not that of the intermediate appellate court. As noted, I fully join the majority's decision to rectify the error via the central holding in the present case.

Justice NEWMAN, Dissenting.

The Majority concludes that Russell Panyko (Claimant) satisfied the burden necessary to achieve entitlement to workers' compensation benefits for a heart attack that he experienced on February 5, 1997, after a single routine, non-disciplinary meeting with the company attendance manager. Because I believe that the Majority has expanded the meaning of "work-related injury" to the point that it has, as a judicial body, converted workers' compensation coverage into general group life and health insurance in contravention of the Workers' Compensation Act (Act),[1] I must respectfully dissent.

Claimant accumulated four occurrences in a twelve-month period, as defined by U.S. Airways (Employer).[2] Employer's

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2502–2626.

2. An occurrence is defined by the Employer as "any time an employee is not at work when he or she is scheduled to be." (Notes of Testimony (N.T.), January 29, 2002, page 22.) When an employee is absent from

attendance control policy provided that, for the fifth occur-
rence in a twelve-month period, the offending employee was
placed on "level one."[3] Because placement on "level one"
constituted a form of discipline, Mr. Egan routinely met with
employees following the fourth occurrence to address possible
problems or correct inaccurate records. These meetings were
short, routine, and non-disciplinary in nature for Mr. Egan
was the attendance control manager for 1,800 U.S. Air em-
ployees. Claimant admitted that he had previously been
placed on level one, and indicated that, after an employee
reached level three, the Employer could "suspend you or
terminate you." (Reproduced Record (R.R.) at 229a.) Claim-
ant forthrightly conceded that he had three occurrences, but
he was upset and angry that he was being charged with a
fourth.[4] (R.R. at 224a.)

Francis B. Perriello (Mr. Perriello), Claimant's immediate
supervisor, testified that, when he informed Claimant that
morning that his presence at an attendance control meeting
was required, Claimant "turned red all over, his entire body
just clenched, [and] he was like a coiled spring." (R.R. at
291a.) Mr. Perriello became alarmed at the ferocity of Claim-
ant's anger and possible danger to his health and attempted,
unsuccessfully, to calm him down. (R.R. at 291a–292a.) How-
ever, Claimant stormed out of Mr. Perriello's office and that
was the last he saw Claimant that day. (R.R. at 293a.)

The previous information was provided at a hearing to
enable the WCJ to determine, on remand from the Common-

his or her work station, the employee's supervisor records an occur-
rence without specifying the actual reason for that occurrence. When
an employee accumulates four occurrences, the attendance control
manager is notified of the dates of the occurrences, but not the reasons
therefore. (N.T., January 29, 2002, page 27.) Claimant had occur-
rences for February 19, 1996, March 17 & 18, 1996 (which counted as
one occurrence), May 29, 1996, and January 18, 1997. (U.S. Air
Employee Contact Report dated February 5, 1997.)

3. Placement on "level 1" required the employee to meet with attend-
ance control for each subsequent occurrence that took place within the
next twelve-month period. (N.T., January 29, 2002, page 9.)

4. Claimant was upset that he was being charged for the occurrence on
May 29, 1996, when he appeared for work, as scheduled, but was
transported to the hospital with chest pains.

wealth Court, whether Claimant had been subjected to "abnormal working conditions." Following a set of hearings, the WCJ found that:

> "[C]laimant entered the February 5, 1997 meeting angry and, in his mind, wrongly charged with a fourth attendance occurrence. Mr. Egan, as claimant's superior, reacted to claimant's indignation in a rational fashion, i.e., by threatening disciplinary action.... This Judge also finds claimant's representation that Mr. Egan placed his life in danger to be unpersuasive. By claimant's own account, Mr. Egan never physically touched him (other than to shake his hand), threatened physical harm and/or verbally abuse[d] or intimidated him. Mr. Egan also never cursed or used obscene or vulgar language toward claimant."

(Decision of WCJ dated June 25, 2002, Findings of Fact 15(f), (g).) Thus, the WCJ concluded that Claimant suffered a "subjective reaction to normal working conditions." (R.R. at 316a.) Remarkably, the Majority would turn this routine attendance control meeting into a physical injury.

The Majority maintains that a claimant should not be required to meet the abnormal working conditions standard delineated in *Davis v. Workmen's Compensation Appeal Board (Swarthmore Borough)*, 561 Pa.462, 751 A.2d 168 (2000), when the claimant "suffers a purely physical injury such as a heart attack." (Op. at 318–19, 888 A.2d at 729.) The Majority, however, eliminates the crucial element of causation required by the Act. The Act mandates that an employer compensate an employee for injuries "arising in the course of his employment and related thereto." 77 P.S. § 411(1). It also states that "all injuries caused by the condition of the premises or by the operation of the employer's business" are included. *Id.* In common parlance, the work injury must be caused by the working conditions. Consequently, the Act makes a distinction between injuries that are work related and those that simply occur at work. Today, the Majority has blurred the distinction between a work-related heart attack and a heart attack that occurs at work.

*Physical Causation v. Mental Causation*

We have never before defied the requirements of the Act and ignored causation and work-relatedness to find that the injury and resulting disability are compensable. This Court has indicated that the term "injury" is to be interpreted according to its common and approved usage. *Pawlosky v. Workmen's Comp. Appeal Bd.*, 514 Pa. 450, 525 A.2d 1204, 1209 (1987). In that case, the Court noted the broad definition of "injury" as set forth in *Creighan v. Firemen's Relief & Pension Fund Board*, 397 Pa. 419, 155 A.2d 844 (1959). "[I]n common speech the word 'injury,' as applied to personal injury to a human being, includes whatever lesion or change in any part of the system produces harm or pain, or a lessened facility of the natural use of any bodily activity or capability." *Id.* at 847 (citation omitted). The term "injury" "*is more commonly used to express . . . the effect on the recipient in the way of hurt or damage, and we do not doubt at this day its common and approved usage extends to and includes any hurtful or damaging effect which may be suffered by anyone.*" *Id.* at 847 (emphasis in original and supplied). Thus, the clear focus of the definition of the term "injury" is on the effect, i.e., the disorder or symptoms suffered by the claimant, in this case, a heart attack.

However, work-related injuries do not occur in a vacuum. In order to meet the requirements of the Act, the injury must be caused by the condition of the premises or the operation of the employer's business, i.e., the working conditions. We have identified the types of stimuli that produce various classes of work injuries. There are four categories of injuries: (1) physical stimulus causing physical injury (physical/physical); (2) psychological stimulus causing physical injury (mental/physical); (3) physical stimulus causing psychic injury (physical/mental); and (4) psychological stimulus causing psychic injury (mental/mental). The causative agent for the injury must reside within the employment scenario. In the instant matter, Claimant's complete description of his physical injury depicts it as a "minor heart attack/aggravation of existing heart condition." He alleges that the causative ele-

ment occurred during "a confrontation with a personnel supervisor at [Claimant's] place of employment." The causative element was a mental one, not a physical one, so we are faced with the mental/physical classification. Accordingly, I believe that the facts of this case must be viewed within the parameters of a mental insult causing a physical injury.

### Psychic Insult Causing Physical Injury

We have traditionally required that, to recover workers' compensation benefits for a psychic injury, a claimant must prove by objective evidence that: (1) he suffered a psychic insult; (2) the psychic insult produced an injury; and (3) the injury is other than a subjective reaction to normal working conditions. *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (Pa.1990). This approach recognized the highly subjective nature of psychic insults and required that the occurrence of the injury and its causal relationship to the claimant's employment be adequately established.

As recognized by the Majority, in the early years of workers' compensation litigation, the 1915 Act limited recovery exclusively to an accident resulting in physical injuries, generally requiring some violence to the body. Early workers' compensation tribunals perceived some difficulty with this definition and developed two doctrines meant to cover injuries that were obviously work related, but fell outside actual violence to the body. Those doctrines were styled as the doctrines of "unusual strain" and "unusual pathological result." These doctrines enabled early jurists to circumvent the requirement for an actual accident where, although no accident occurred, the injury was clearly related to the individual's employment. The accident in the case of the "unusual strain" doctrine was supplied by finding that the injuries were the result of excessive exertion by a worker while performing a task atypical to his employment. *See, e.g., Skroki v. Crucible Steel Co.*, 292 Pa. 550, 141 A. 480 (1928) (finding that heart attack was "accident" that occurred because of overexertion in a hot room); *Hilt v. Roslyn Volunteer Fire Co.*, 445 Pa. 149, 281 A.2d 873, 875 (1971) (denying benefits pursuant to "unusu-

al strain" doctrine for firefighter who suffered from a heart attack by "doing an occasional act involving sustained muscular effort, though the work is not hard"). In the case of the "unusual pathological result" doctrine, benefits were awarded by finding that the accident occurred because there was an extraordinary effect of work performed in the usual fashion. *Hinkle v. H.J. Heinz Co.*, 462 Pa. 111, 337 A.2d 907 (1975) (mechanic in can-making factory suffered "accident" by sustaining unexpected loss of hearing performing his normal job); *Parks v. Miller Printing Mach. Co.*, 336 Pa. 455, 9 A.2d 742, 744 (1939) ("accident resides in the extraordinary nature of the effect rather than in the cause"); *Lane v. Horn & Hardart Baking Co.*, 261 Pa. 329, 104 A. 615 (1918) (casualty attributable solely to the unexpected and violent effect of heat upon the physical structure properly held to be an accident). These doctrines ultimately metamorphed into the abnormal working conditions standard we established in *Martin* to review mental insults.

In 1972, the General Assembly amended the Workers' Compensation Act to include all work-related injuries, including occupational diseases. However, tribunals concerned with workers' compensation matters continued to require an elevated standard to distinguish normal workplace occurrences from those that were compensable work-related injuries. *See, e.g., Haverford Twp. v. Workmen's Comp. Appeal Bd. (Angstadt)*, 118 Pa.Cmwlth.467, 545 A.2d 971 (1988) (decedent's heart attack precipitated by excessively stressful demands of employer, unusually stressful work environment, and series of abnormal, stressful incidents at work); *American St. Gobain Corp. v. Workmen's Comp. Appeal Bd. (Kordalski)*, 11 Pa. Cmwlth.388, 314 A.2d 40 (1974) (holding that accident may not be inferred from the fact that employee sustained a heart attack as a result of exertion necessary for performance of usual duties and work is done in same quantity and manor as performed in the past).

In *Workmen's Compensation Appeal Board v. Bernard S. Pincus Co.*, 479 Pa. 286, 388 A.2d 659 (1978), we appeared to lower the standard, when in fact we essentially applied the "unusual pathological result" doctrine to find that heart at-

tacks were compensable work injuries due to the damage to the internal tissues of the workers' hearts. Many cases cited to the decision of this Court in *Krawchuk v. Philadelphia Electric Co.*, 497 Pa. 115, 439 A.2d 627 (1981), for the proposition that, where employment stress produced a heart attack, the claimant only had to show that the injury was related to his employment. However, no challenge was mounted in *Krawchuk* as to the work-relatedness of the heart attack or the existence of a mental insult. The only issue there was whether the claimant could be compensated for the death of her husband when he was working on behalf of his employer in his own home. The determination that Krawchuk's heart attack and death were compensable was based on the finding that he experienced "unusual stress, strain[,] and exertion" in his employment that directly resulted in his fatal coronary attack and that he was working in furtherance of his employer's interests at the time of his death.

In *Martin*, this Court clarified the law on this issue by explicitly stating that the proper standard for reviewing psychic insults is whether they result from other than subjective reactions to normal working conditions. Subsequent courts reasoned that a psychic stimulus that produced an effect other than a subjective reaction to normal working conditions must be caused by abnormal working conditions. Since *Martin*, this Court has issued at least nine additional Opinions on the standard for granting benefits in cases of psychic insults, all of which require a finding that the precipitating cause of the injury is other than a subjective reaction to normal working conditions. *See Volterano v. Workmen's Comp. Appeal Bd. (Traveler's Ins.)*, 536 Pa.335, 639 A.2d 453 (1994) (mental/mental); *Romanies v. Workmen's Comp. Appeal Bd. (Borough of Leesport)*, 537 Pa.440, 644 A.2d 1164 (1994) (mental/mental); *Wilson v. Workmen's Comp. Appeal Bd. (Aluminum Co. of America)*, 542 Pa.614, 669 A.2d 338 (1996) (mental/mental); *Phila. Newspapers, Inc. v. Workmen's Comp. Appeal Bd. (Guaracino)*, 544 Pa.203, 675 A.2d 1213 (1996) (mental/mental); *Hershey Chocolate Co. v. Workmen's Comp. Appeal Bd. (Lasher)*, 546 Pa.27, 682 A.2d 1257 (1996) (mental/mental); *Pa. Human Relations Comm'n v. Workmen's Comp. Appeal Bd.*

*(Blecker)*, 546 Pa. 83, 683 A.2d 262 (1996) (mental/mental); *Ryan v. Workmen's Comp. Appeal Bd. (Cmty. Health Servs.)*, 550 Pa.550, 707 A.2d 1130 (1998) (mental/mental); *Davis v. Workmen's Comp. Appeal Bd. (Swarthmore Borough)*, 561 Pa.462, 751 A.2d 168 (2000) (mental/mental with physical symptoms); and *Phila. v. Civil Serv. Comm'n*, 565 Pa. 265, 772 A.2d 962 (2001) (mental/mental). Although the Majority attempts to define the instant matter solely in terms of the physical injury, the mental element, which supplies the causation that is required by the Act, should not be swept aside as insignificant. It makes no sense to evaluate psychic insult on different planes depending on whether the resulting injury is mental or physical. I remain convinced that all psychic insults should be evaluated in the same manner. I cannot agree with the position of the Majority that, in "mental/physical" cases, the claimant must only show distinct identifiable physical injuries and present unequivocal medical testimony that connects the physical disability to the workplace in order to receive benefits. The flaw in this reasoning is that it circumvents the causative link between the physical injury and employment that the Act requires. Pursuant to this theory, any employee who gets sick at work will be entitled to workers' compensation benefits. For example, an employee who gets a migraine headache because a work deadline is approaching can claim a work-related injury. One who has a stroke at his or her work desk can claim a work-related injury. Finally, one who has a heart attack after a routine, non-disciplinary meeting at work can claim a work-related injury.

It is well established that a claimant in a workers' compensation case has the burden to prove all the statutory elements that comprise a compensable injury by a preponderance of the evidence. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 535 Pa.135, 634 A.2d 592 (1993). This includes establishing the cause of the condition for which compensation is claimed and proving that the injury arose out of and in the course of employment. To meet the preponderance standard, the claimant must present evidence that leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence. However, nothing in the Act

requires that the evidence be liberally construed in a claimant's favor when determining whether an injured worker has met his or her burden of proof.

I believe that a claimant must also prove that the injury occurred either because of a work-connected risk or because the employment placed the claimant at a risk of exposure exceeding that of the general public. When working conditions create a higher-than-normal degree of stress, and that stress contributes to an employee's injury, only then has the necessary causation been established. Subjective, perceived, or imagined employment events do not supply the causative element that mandates liability for an employer. It is critical to maintain the same standards by which we judge psychic insults regardless of whether they spawn psychic injuries or physical ones. Removing the causative mental insult from the analysis will result in an employer becoming subject to workers compensation liability for terminating a worker,[5] promoting an employee,[6] reassigning an employee,[7] giving a performance evaluation,[8] or a single incident of egregious supervisory behavior.[9]

It is interesting that the Superior Court was once faced with a situation similar to that in the present case. Elisha Hoffman (Hoffman), a train engineer, died following a heated argument with his foreman after arriving late for work one morning. The court explained:

5. *Erie Bolt Co. v. Workers' Comp. Appeal Bd. (Elderkin)*, 777 A.2d 1169 (Pa.Cmwlth.1998), rev'd *per curiam*, 562 Pa. 175, 753 A.2d 1289 (Pa. 2000) (fatal heart attack on learning of termination).

6. *Hershey Chocolate Co. v. Workmen's Comp. Appeal Bd. (Lasher)*, 546 Pa.27, 682 A.2d 1257 (1996) (depression caused by increased workload following promotion).

7. *Wilson v. Workmen's Comp. Appeal Bd. (Aluminum Co. of Am.)*, 542 Pa.614, 669 A.2d 338 (1996) (depression caused by employee's subjective perception that reassignment to temporary job is demeaning).

8. *Pennsylvania Human Relations Commission et al. v. Workmen's Comp. Appeal Bd. (Blecker)*, 546 Pa.83, 683 A.2d 262 (1996) (suffered adjustment reaction with anxiety after receiving performance review).

9. *Philadelphia Newspapers, Inc. v. Workmen's Compensation Appeal Board*, 544 Pa. 203, 675 A.2d 1213 (1996) (depression caused by subjective reaction to single incident of supervisory criticism).

The argument lasted five or ten minutes and was accompanied by provocative epithets by the foreman and some gesticulations by Hoffman. At the conclusion of the argument Hoffman mounted his "loky" engine, on which he was employed as engineer, ran it about 1,000 or 1,500 feet, stopped to take a drink of coffee, and either dismounted or fell from the engine and died a few minutes thereafter. No assault was made upon him by the foreman. No blow was struck, or attempted to be struck, by either of them. Neither threatened the other with any show of force. Hoffman was white with anger when he mounted the engine; and he died from [myocardial infarction], he was suffering from chronic myocarditis—undoubtedly induced by the intensity of his own emotions. But there was no compensable accident within the meaning of the Workmen's Compensation Act.

*Hoffman v. Rhoads Constr. Co.*, 113 Pa.Super. 55, 172 A. 33, 33 (1934). The court opined that "purely subjective emotions, the result of anger, grief, joy, or other mental feeling, if unaccompanied by physical force or exertion, cannot be made the basis of a compensable accident." *Id.* at 33–34.

I believe that a better approach is to require that a claimant show exposure to a greater degree of emotional stress than experienced by his or her peers, the general working public, or his work environment to demonstrate a compensable injury. This approach is fairer to a claimant and fairer to the employer. Rather than applying different standards without justification, it treats all psychic insults consistently regardless of whether they result in mental or physical injury.

## CONCLUSION

There is no dispute that Claimant experienced a myocardial infarction. The only question before the WCJ was whether Claimant's heart attack was work related. Within that context, there is no evidence that Claimant experienced a period of employment with stress either greater than that experienced by his peers or the general public, or greater than that

experienced within his normal employment. In fact, the evidence established that he was subjected to the same routine, non-disciplinary meeting as at least five other people that day. Claimant's subjective reaction began more than an hour before the meeting actually took place when his supervisor informed him that he was required to meet with the attendance control manager. As the testimony of his supervisor demonstrated, Claimant "turned red all over, his entire body just clenched, [and] he was like a coiled spring." (R.R. at 291a.) This meeting was both routine and non-disciplinary and cannot justifiably be seen as a psychic insult of such magnitude as to cause Claimant's heart attack. We have previously observed that "the work environment is a microcosm of society. It is not a shelter from rude behavior, obscene language, incivility, or stress." *Phila. Newspapers,* 675 A.2d at 1219. Hence, if there were any outside stimulus that can be said to have caused Claimant's injury, it was his subjective reaction to a routine event, if anything, which caused his injury. Accordingly, I believe that the WCJ properly concluded that Claimant suffered a "subjective reaction to normal working conditions" and therefore, the decision of the WCJ should be reinstated. In this case, Claimant did not suffer a work-related heart attack; he suffered a heart attack at work.