Kathleen MOBERG, Petitioner

v.

## WORKERS' COMPENSATION APPEAL BOARD (TWINING VILLAGE), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 24, 2009.

Decided March 17, 2010.

Publication Ordered May 25, 2010.

---

Ian F. Landman, Philadelphia, for petitioner.

Edward H. Jordan, Jr., Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Kathleen Moberg (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) denying her Claim Petition. We affirm.

Claimant filed Claim Petition against Twining Village (Employer), a retirement community, alleging she sustained an injury in the course and scope of her employment on April 12, 2006. Claimant asserted that as a condition of employment, she was required to have a tuberculin test. She alleged that after undergoing the test, she had an adverse reaction. She fainted and fell to the floor. Claimant sought payment of resultant medical bills.

Claimant testified that she applied to be a server in the dining room operated by Employer. She stated that on April 12, 2006, after applying for the job, she reported to Employer's outpatient room to receive a tuberculin test. She explained

that taking the tuberculin test was a condition to working for Employer. She added, "[i]t was one of the procedures that I had to go through before I could get hired." Reproduced Record (R.R.) at 18a. According to Claimant, the nurse performed the test in her forearm and then left the room. Claimant then passed out and struck her head. She received medical treatment that day including undergoing a CAT scan.

Claimant verified that Employer ultimately did hire her approximately one month after the test. On cross-examination, she agreed she was not Employer's employee as of April 12, 2006. She added, however, that she was told she was hired prior to that date, but before she could start working she had to submit to the tuberculin test. Claimant believed she signed an employment agreement with Employer prior to the syncope episode. She did not have a copy of any such agreement. Claimant did not recall if that agreement contained a start date, but noted her start date was conditioned upon the end of her school year. She acknowledged she received no pay for any work on April 12, 2006.

Employer presented the testimony of Denise M. Miller, its Executive Director, who is responsible for all operations of the retirement community. She explained that in order to become one of Employer's employees, one must complete an I–9 form, submit vehicle information, undergo a background check, submit to a drug test, and sign a job description. Ms. Miller agreed a tuberculin test is also required for every employee who is working in a healthcare environment "on hire." R.R. at 52a. The test is done on Employer's premises. It is a two step-process where in the first step, a skin test is done. The skin is viewed forty-eight hours later to see if there is a negative reaction. If

there is none, the same process is repeated seven to ten days later. According to Ms. Miller, both steps need to be completed before you can start working for Employer. She explained "all of the testing needs to be done in order to be considered hired." *Id.* at 55a. She elaborated by stating, "[w]e are not permitted to allow any applicant to start work without the two-step [tuberculin test]. It is clearly stated in the regulations that we have to follow." *Id.* at 56a. Ms. Miller added that in regards to drug testing, Employer has no control over the timeframe regarding its completion as it is done off site and it is up to the applicant to be diligent in getting it completed.

Ms. Miller indicated Employer does not use employment contracts. Claimant, per Ms. Miller, was not an employee as of April 12, 2006. She acknowledged Claimant was hired on subsequently. She further agreed upon questioning by the WCJ that the only people sent for tuberculin tests are successful candidates that are anticipated to be hired by Employer.

Employer further presented the testimony of Dariel A. Kirk, supervisor for the outpatient department in the independent living section, who administered the tuberculin test on April 12, 2006. She agreed that on that date, the first step of the test was administered. Ms. Kirk indicated that the test is part of the process of being hired by Employer. On cross-examination, Ms. Kirk agreed that only patients and employees obtain medical care and/or services at the outpatient department.

By a decision circulated December 30, 2008, the WCJ denied Claimant's Claim Petition. She concluded Claimant failed to meet her burden of establishing that there was an employer/employee relationship at the time Claimant sustained her injury. The WCJ found Claimant was a mere applicant at the time of her injury. The

WCJ noted that although Claimant expressed that she entered into an employment contract before the date of injury, she failed to submit any contract into the record to corroborate that testimony. She further concluded Claimant gave inconsistent statements by stating first that she was hired before submitting to the tuberculin test, but later admitting that she was not an employee as of April 12, 2006 and that she understood further steps needed to be taken before she could be hired. The WCJ credited the testimony of Ms. Miller and Ms. Kirk that Claimant was a job applicant at the time of her injury, that there was no contract for employment, that she received no salary for work performed on April 12, 2006, and that she had not completed all prerequisites to be hired as of that date.

The Board affirmed on August 21, 2009 deferring to the WCJ's fact-finding ability the WCJ's credibility determinations. This appeal followed.[1]

Claimant argues on appeal that the WCJ erred in denying her Claim Petition. She contends the record supports a finding that she was in the course and scope of her employment at the time of her injury on April 12, 2006. The crux of Claimant's argument is that Claimant was hired for all intents and purposes prior to April 12, 2006 and that undergoing a tuberculin test was only a formality before she could actually begin working.

Section 301(a) of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 431, provides, in relevant part:

> Every employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence, according to the schedule contained in sections three hundred and six and three hundred and seven of this article. . . .

In a claim petition, the burden of proving all necessary elements to support an award rests with the claimant. *Inglis House v. Workmen's Compensation Appeal Board (Reedy),* 535 Pa. 135, 634 A.2d 592 (1993). The claimant must establish that her injury was sustained during the course and scope of employment and is causally related thereto. *McCabe v. Workers' Compensation Appeal Board (Dep't of Revenue),* 806 A.2d 512 (Pa.Cmwlth.2002). A claimant must establish an employer/employee relationship in order to be entitled to benefits under the Act. *Universal Am–Can, Ltd. v. Workers' Compensation Ap-*

---

1. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *DeGraw v. Workers' Compensation Appeal Board (Redner's Warehouse Mkts., Inc.),* 926 A.2d 997 (Pa. Cmwlth.2007). On appeal, the prevailing party below is entitled to all inferences that can be reasonably drawn from the evidence. *Krumins Roofing & Siding v. Workmen's Compensation Appeal Board (Libby),* 133 Pa. Cmwlth.211, 575 A.2d 656 (1990). A WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck),* 664 A.2d 703 (Pa.Cmwlth. 1995). Her credibility determinations are not reviewable by this Court. *Campbell v. Workers' Compensation Appeal Board (Pittsburgh Post Gazette),* 954 A.2d 726 (Pa.Cmwlth.2008). It does not matter that there is other evidence of record that supports a factual finding other than that made by the WCJ. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Prods. Inc.),* 721 A.2d 1152 (Pa.Cmwlth.1998). Rather, the proper inquiry is whether there is any evidence that supports the WCJ's factual findings. *Community Empowerment Ass'n v. Workers' Compensation Appeal Board (Porch),* 962 A.2d 1 (Pa.Cmwlth.2008).

*peal Board (Minteer)*, 563 Pa. 480, 762 A.2d 328 (2000). A determination regarding the existence of an employer/employee relationship is a question of law subject to this Court's review. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262 (Pa.Cmwlth. 1995).

■ An employment relationship may exist even when wages are not being earned. *See Reifsnyder v. Workers' Compensation Appeal Board (Dana Corp.)*, 584 Pa. 341, 883 A.2d 537 (2005)(holding that periods when long term employees are laid off do not sever an employment relationship for purposes of calculating an average weekly wage). The term "employ," albeit in analyzing Section 309 of the Act, 77 P.S. § 582, has been found not to be limited to the actual days an employee works for wages, but encompasses the period of time that an employment relationship is maintained by the parties. *Norton v. Workers' Compensation Appeal Board (Norton)*, 764 A.2d 704 (Pa.Cmwlth.2000).

■ Upon review, we see no error in the WCJ's determination. Section 301(a) of the Act indicates that Employer is liable for injuries sustained by its employees in the course and scope of their employment. Claimant had the burden in this proceeding and was required to establish her injury was sustained while in the course of her employment. *Inglis House; McCabe*. No benefits need be paid if the employer/employee relationship is not established. *Minteer*.

■ There is no dispute between the parties that Claimant was employed by Employer at some point after the injury in this case. The issue is whether Claimant was Employer's employee on April 12, 2006 when she had her syncope episode.

The WCJ was presented with the testimony of Claimant and that of Ms. Miller and Ms. Kirk. The testimony of these individual's was not without their inconsistencies. For instance, Ms. Miller testified a tuberculin test was required "on hire." It is reasonable to interpret this statement to mean that once Claimant was "hired," she was expected to submit to the test that led to her injury. Nonetheless, the remainder of Ms. Miller's testimony is consistent with Ms. Miller's belief that Claimant was a mere applicant at the time the tuberculin test was conducted, albeit a strong candidate to work for Employer.

We reiterate that the WCJ found inconsistencies with Claimant's testimony as well. The WCJ pointed out that while Claimant testified she was told she was hired by Employer prior to April 12, 2006 but could not start working before receiving the tuberculin test, the remainder of her testimony was consistent with the idea that undergoing the tuberculin test was a prerequisite to employment.

In reviewing the evidence as a whole, the WCJ concluded that Claimant was not an employee at the time of her injury. Rather, the WCJ found Claimant was still an applicant going through the hiring process. In so doing, the WCJ credited Employer's witnesses over Claimant's testimony.[2] Her credibility determinations are not reviewable by this Court. *Campbell*. Because Employer prevailed both before the WCJ and the Board, it is entitled to all reasonable inferences that can drawn from the evidence. The evidence undoubtedly supports the determination made by the WCJ. *Libby*. Arguably, the evidence could support a finding that Claimant was an employee on April 12, 2006. This is immaterial, however, as the record sup-

2. The WCJ also found it significant that while Claimant testified she entered into an employ-ment contract, she was unable to produce such a document.

ports the finding made by the WCJ. *Hoffmaster; Porch.*

We acknowledge that whether there is an employer/employee relationship is a question of law subject to this Court's review. *Nevin Trucking.* Moreover, the fact that Claimant did not receive payment for any activity done on April 12, 2006 is not necessarily controlling. *Reifsnyder.* Nonetheless, an employment relationship must be maintained by the parties. *Norton.* There was none in this instance based on the findings made by the WCJ. This Court notes that while Claimant ended up being hired by Employer, that fact is not dispositive of the outcome of this case. Claimant may have ended up not getting the job had she failed the tuberculin test, the drug test, or unsuccessfully completed any of Employer's other requirements for employment.[3] We cannot agree with Claimant's position that Employer's pre-requisites to hire, specifically taking the tuberculin test and submitting to drug testing were a mere formality and that her claim should be granted.[4]

While we sympathize with Claimant, even she, in submitting her brief to this Court, cannot escape the fact that she was hired subsequent to undergoing the tuberculin test despite her contention that she was an employee on April 12, 2006. The following statements are scattered throughout her brief and support the determination made by the WCJ:

Claimant was hired by the Defendant and began working for them *after her injury.*

\* \* \*

But for applying for the job and *as a condition to Claimant getting the job,* petitioner was required to undergo testing, which she had on the employer's premises at the time the incident occurred. Moreover, Petitioner was *ultimately hired* for the position.

\* \* \*

Claimant testified that she was hired and employed by Defendant as a server *following the incident.*

\* \* \*

The fact testimony presented by the employer... does not in any material way rebut Claimant's testimony, in as much as she applied for the job, was directed for the testing, had it done on the employer's premises, was injured, incurred unpaid bills as a result *and was ultimately hired.*

\* \* \*

Defendant only opened its facility to Claimant for a TB test *as part of the process of hiring Claimant.*

Claimant's brief, p. 5, 6, 8, 10.

Based upon our review of the record, we see no error in the WCJ's determination to deny Claimant's Claim Petition. Consequently, the Board's order that did not disturb the WCJ's decision is affirmed.

---

**3.** We reiterate that Ms. Miller believed that Claimant had to submit to a tuberculin test pursuant to regulation. Ms. Miller does not state what regulation she was referencing. We cannot ignore, however, that if Ms. Miller believed Claimant was required to submit to the tuberculin test prior to being able to work for Employer, that is probative of the fact that Claimant was not hired until sometime after the tuberculin test was completed.

**4.** Claimant argues that the WCJ failed to issue a reasoned decision. The WCJ provides sufficient basis for us to conduct meaningful appellate review. *See Daniels v. Workers' Compensation Appeal Board (Tristate Transp.),* 574 Pa. 61, 828 A.2d 1043 (2003)(holding a decision is "reasoned" if it allows for adequate review without further elucidation). Consequently, we reject Claimant's argument.

## ORDER

AND NOW, this 17th day of March, 2010, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.