**Janet LITTLE, dependent of David Little, Deceased, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (B & L FORD/CHEVROLET), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 14, 2011.
Decided July 28, 2011.

Lawrence D. Levin, Jenkintown, for petitioner.

Sean B. Epstein and Lee Ann Rhodes, Pittsburgh, for respondent B & L Ford/Chevrolet.

BEFORE: McGINLEY, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.[1]

Petitioner Janet Little (Claimant), the surviving spouse of David Little, deceased (Decedent), petitions for review of an order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) to deny Claimant's fatal claim petition.[2] We affirm.

Keeping in mind that the WCJ was considering both a claim petition and a fatal claim petition, we summarize the WCJ's factual findings (Reproduced Record (R.R.) at 61a–62a) as follows. Decedent worked for Employer on October 1, 2005,[3] when he sustained an injury to his shoulders. After he sustained that injury, he began to perform light duty work. Decedent continued to perform light duty work until January 13, 2006, when Employer directed him to return to "the floor doing physical labor and his regular job duty."

Decedent continued to perform his regular job duties until January 19, 2006, when Alice Leffler, another employee, gave Decedent a letter and sent Decedent home. The letter informed Decedent that Employer had received a letter from Decedent's attorney indicating that Decedent could not perform any type of manual labor. (R.R. at 32a; Claimant's Ex. C–2.) The letter stated that Employer thought Decedent "would not come back to work unless [Decedent was] physically able. And when you showed up on Monday, I assumed you were able.... However, your lawyer must think that you are not able. So, rather than risk further injury, I must insist that you receive a doctor's report advising us what type of work you are capable of performing." Decedent obtained a note from Dr. Ronald Abraham, D.O. (Dr. Abraham), indicating that he could not work. Decedent intended to produce the letter to Employer, but before Decedent brought the doctor's excuse to Employer, Ms. Leffler told Decedent, in a telephone conversation, that Decedent did not need to bring the letter to Employer. Rather, Ms. Leffler informed Decedent that he would be receiving a letter from Employer. Decedent received the letter from Employer on Saturday, January 28, 2006. The letter terminated Decedent's employment.[4]

---

1. The majority opinion was reassigned to the authoring judge on May 10, 2011.

2. Claimant also filed a claim petition seeking total disability benefits for an injury Decedent sustained on October 1, 2005, while he was employed by B & L Ford/Chevrolet (Employer). The WCJ granted the claim petition, and Employer appealed that aspect of the case to the Board, which affirmed. Employer has not sought review of that aspect of the Board's order.

3. The exact wording of F.F. No. 1 is that "[Decedent] was employed ... on October 1, 2005 and January 30, 2006."

4. Although the WCJ determined as a matter of fact that the letter terminated Decedent's employment, the letter indicated that Employer regarded Decedent's actions as indicating that Decedent had voluntarily terminated his employment. The letter stated, in pertinent part:

Following his receipt of the letter and throughout the remainder of that weekend, Decedent and Claimant discussed the ramifications of the termination and its effect on their finances. During that time, Decedent was unable to eat or sleep, and paced the floor reading the letter over and over again. Claimant went to work Monday, January 30, 2006, and received a phone call from Decedent at about 12:00 p.m. Claimant returned home and found Decedent sitting at a table, reading the letter again and again. Decedent ultimately folded the letter, rose from the table, and collapsed to the floor. When emergency personnel arrived at the home, the ambulance driver and police had to pry the letter from Decedent's hand. Neither the medical personnel at the home nor at the hospital were able to revive Decedent, and he died that day.

The WCJ conducted hearings on the claim petition and fatal claim petition, crediting Claimant's testimony, the substance of which is reflected above. Claimant also offered the credited testimony of Decedent's friend, George Klischer, who indicated that he conversed with Decedent the day after Decedent received the letter and observed Decedent crying and upset regarding his termination.[5]

Claimant also submitted the testimony of two physicians, Dr. Richard P. Bindie, M.D., and Jeffrey S. Fierstein, M.D. Employer submitted the testimony of Dr. David M. Leaman, M.D. The WCJ did not address the testimony of any of these experts, based upon his ultimate legal conclusion that Decedent was not in the course of his employment when he died, and that, therefore, the testimony was not pertinent to the resolution of the legal issues presented. With regard to the fatal claim petition, the WCJ concluded as a matter of law that Claimant had failed to sustain her burden to prove that Decedent died while in the course of employment or while furthering Employer's business. With regard to the claim petition, the WCJ determined that for the purposes of that aspect of Claimant's claims, Decedent was totally disabled as of the last day he worked, January 19, 2006. In his order, the WCJ stated that Claimant was entitled to an award of temporary total disability for the period from January 19, 2006, through January 30, 2006, the latter date, of course, being the date of Decedent's death.

Claimant appealed to the Board, contending that the WCJ had erred in concluding that Claimant had failed to sustain her burden of proof in her fatal claim petition. The Board first observed a line of cases involving employees who had died of heart attacks, noting that although a claimant need not necessarily establish that the death occurred while at work, such a claimant must demonstrate that the death occurred in the course of employment or furtherance of an employer's busi-

---

On January 19, I gave you a letter requesting a doctor's report advising us what type of work you were capable of performing before reporting to work. To date we have received no communication from either you or your doctor with this information. It is over one week since we requested this information, and we feel this is a reasonable time period for you to satisfy our request. Since you have not done so, and have not communicated with us except through your attorney, we are concluding that you have voluntarily terminated your employment as of January 27, 2006.
(R.R. 33a; Claimant's Ex. C–3.)

5. The WCJ also found the affidavit of Dr. Abraham to be credible. In his affidavit, Dr. Abraham indicated that he evaluated Decedent on January 25, 2006, and had "taken" Decedent "out of work" at that time for a two-to-four week period, because of a repetitive work injury that he believed Decedent had sustained. (R.R. at 53a–54a; Affidavit of Dr. Abraham.)

ness. Additionally, the Board reasoned that while a discharge from employment that precipitates a fatal heart attack may be compensable, the facts as determined by the WCJ in this case do not support the grant of Claimant's fatal claim petition, in part, because there was no evidence of abnormal working conditions.

■ Claimant filed a petition for review with this Court, raising the following issues for review:[6] (1) whether the Board imposed an erroneous burden of proof upon Claimant by applying the standards applicable to injuries arising from abnormal working conditions; (2) whether substantial evidence supports the determination that Decedent's death occurred outside the course of employment; and (3) whether the Board erred by basing its decision upon the testimony of a medical expert that was admitted to the record, but which the WCJ deemed irrelevant to his decision and which the WCJ did not consider based upon his legal conclusion that Decedent's death did not occur in the course of his employment.

The law relating to claim petitions involving heart attacks has evolved slowly over the years. Beginning with *Krawchuk v. Philadelphia Electric Company*, 497 Pa. 115, 439 A.2d 627 (1981), our Supreme Court addressed the burdens that the Pennsylvania Workers' Compensation Act[7] (the Act) imposes upon claimants seeking to recover upon such claims. *Krawchuk* involved a decedent engineer who died of a heart attack at his home.

The claimant in that case asserted that excessive strain and pressure arising in the course of employment caused the decedent's heart attack and consequential death. Although the decedent did not die at his employer's place of business, the evidence indicated that duties associated with his employment, including extra work he was required to perform for his job, had created stress for the decedent. The workers' compensation judge (then known as a referee) concluded that the claimant had sustained her burden of proof by submitting credible expert medical opinions that established a direct causal relationship between the work-related stress and the decedent's fatal heart attack.

In considering the matter, our Supreme Court concluded that regardless of the location where an employee sustains a fatal injury, a claimant must still prove the essential elements for recovery under the Act: (1) that the employee's injury arose in the course of employment, and (2) that the injury was related to the employment. *Krawchuk*, 497 Pa. at 120, 439 A.2d at 630. The Supreme Court stated that "[t]he location [of an injury] should be ... merely a factor for the [WCJ] to consider." *Id.* at 124, 439 A.2d at 632. The Supreme Court explained:

> Thus, for example, if the victim has a heart attack during the latter part of a several month leave of absence, location might be a very relevant indicator of whether the injury arose in the course of

---

6. Our standard of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. We acknowledge our Supreme Court's decision in *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), wherein the

Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Wintermyer*, 571 Pa. at 203, 812 A.2d at 487.

7. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

employment; conversely, where the victim has a heart attack in the subway on the way home after a particularly stressful day at work, the location would seem to be a minimal factor. In either case, the referee must determine whether the attack was causally connected to the work, i.e., whether the injury arose in the course of employment and was related thereto.

*Id.*, 439 A.2d at 632 n. 2.

Many years later, in *Erie Bolt Corporation v. Workers' Compensation Appeal Board (Elderkin) (Erie Bolt)*, 777 A.2d 1169 (Pa.Cmwlth.1998), *rev'd (per curiam )*, 562 Pa. 175, 753 A.2d 1289 (2000), this Court affirmed a workers' compensation judge's determination that the stress of being fired was a significant contributing factor to, a decedent's fatal heart attack, which occurred approximately one hour after the employer terminated his employment. The Supreme Court reversed our decision in *Erie Bolt* by a per curiam order, citing the Supreme Court's decision in *Davis v. Workers' Compensation Appeal Board (Swarthmore Borough) (Davis)*, 561 Pa. 462, 751 A.2d 168 (2000). *Davis*, however, involved the Supreme Court's analysis of the review appropriate for claimants asserting that they are disabled because of a psychic injury. The Supreme Court concluded that in psychic injury cases, a claimant must establish by objective evidence that the employee suffered a psychic injury and that the injury is not simply a subjective reaction to normal working conditions. A claimant's burden, the Supreme Court concluded, included a demonstration that the events that allegedly gave rise to the compensation claim actually occurred, and also that those events were abnormal. *Id.* at 479, 751 A.2d at 177.

Following the Supreme Court's decision in *Davis*, and its per curiam reversal of *Erie Bolt* by reference to *Davis*, this Court in *U.S. Airways v. Workers' Compensation Appeal Board (Panyko)*, 779 A.2d 1233 (Pa.Cmwlth.2001), *rev'd, Panyko v. Workers' Compensation Appeal Board (U.S.Airways) (Panyko)*, 585 Pa. 310, 888 A.2d 724 (2005), reasoned that the Supreme Court in *Davis* signaled that when a claimant sustains a physical injury such as a heart attack because of a psychic reaction to working conditions, a claimant must establish (1) a causal connection between working conditions and the injury and (2) that the working conditions were abnormal.

*Panyko* involved a claimant who sustained a heart attack shortly after a meeting with a supervisor regarding the claimant's absences from work. The discussion between the claimant and his supervisor was heated, and although the claimant seemed satisfied with the outcome of the meeting, he began to experience pain in his back, neck, and shoulders. The claimant's union steward took him to the hospital where medical staff determined that he was suffering from a heart attack.

On appeal from our decision, the question before the Supreme Court in *Panyko* was whether this Court had "erroneously required the claimant to establish that his heart attack was due to abnormal working" conditions. *Panyko*, 585 Pa. at 319, 888 A.2d at 729. The Supreme Court rejected our reliance upon its holding in *Davis* and stated that "given the facts in *Davis*, that case only stands for the proposition that where a claimant suffers a psychic injury with attendant physical symptoms, the claimant must meet the abnormal working relations test." *Id.* at 322, 888 A.2d at 731.[8]

---

8. The Supreme Court noted this Court's reliance upon the Supreme Court's per curiam

The Supreme Court made clear that when a claimant asserts that he sustained a physical injury because of a psychic reaction to working conditions, the abnormal working conditions test does not apply. Rather, a claimant's burden is simply to prove that (1) he is "suffering from an objectively verifiable physical injury; and (2) 'the injury arose in the course of employment and was related thereto.'" *Id.* at 323, 888 A.2d at 732 (quoting *Krawchuk,* 497 Pa. at 121, 439 A.2d at 630). Thus, Claimant is correct in asserting that the abnormal working conditions test is not applicable in this case.

The Supreme Court's reflections in *Panyko* relating to physical injuries, however, cannot resuscitate the holding in our earlier decision in *Erie Bolt,* as the Supreme Court did not explain in *Panyko* the rationale for its reversal of *Erie Bolt.* Further, although *Erie Bolt* is somewhat similar to this case because it involved a claimant who sustained a heart attack contemporaneously with his employer's termination of his employment, the issue this Court addressed in that case is distinct from the primary issue in this case. The primary issue the employer raised in *Erie Bolt* was whether substantial evidence supported the workers' compensation judge's determination that a causal connection existed between the stress of being fired and the

claimant's heart attack. The courts did not consider the question of whether the claimant was injured *in the course of employment* when his heart attack occurred essentially at the moment of termination. The distinct factual scenario in this case, where Decedent received the termination letter on January 28, 2006, but did not suffer his heart attack until January 30, 2006, presents a different question for review.

■ In this case, the WCJ made inconsistent factual findings regarding the end date of Decedent's employment. Finding of Fact No. 1 suggests the WCJ determined that January 30, 2006 (the date Decedent died) was a pertinent date for the purpose of establishing that an employment relationship existed. In apparent conflict with that determination, the WCJ also determined in Finding of Fact No. 2 that the letter Decedent received on January 28, 2006, terminated his employment. We view this discrepancy as reflecting the fact that Claimant filed two distinct claim petitions: (1) one claim seeking total disability benefits; and (2) another claim seeking fatal claim benefits. If Decedent had not died, but instead had filed only a single claim petition seeking total disability benefits, Decedent would have been entitled to benefits beyond the date of his termination.[9] The WCJ, there-

---

reversal of our decision in *Erie Bolt,* which, as noted above, involved a claimant who had a heart attack within approximately one hour of being fired:

> The Commonwealth Court found that this Court expanded the abnormal conditions test to cases in which a claimant suffers from a psychic/physical injury by means of our per curiam order in *Erie Bolt* …, which reversed the order of the [Commonwealth] Court based on *Davis.* However, our current recognition that *Davis* did not address psychic/physical injuries makes plain that our mere citation to *Davis* in *Erie Bolt* could not have expanded the abnormal

working conditions test to cover such injuries … (although an unexplained per curiam reversal establishes the law of the case, "by definition it establishes no precedent beyond the authority cited in the order.")

*Id.,* 585 Pa. at 323, 888 A.2d at 732 n. 10.

9. As in any workers' compensation claim, an employee who establishes a work-related injury is entitled to continued benefits, notwithstanding a change in the employment relationship, until an employer is successful in terminating or suspending compensation benefits. Thus, if Decedent had not died two days after Employer terminated his employ-

fore, had reason to determine that, for the purpose of analyzing the period of the disability claim petition, the date of Decedent's death on January 30, 2006, was pertinent, because it identifies the date upon which disability benefits legally could end. This reasonably explains what appears to be an inconsistency in the WCJ's fact finding. With that matter resolved, the question we must focus on is whether Decedent was in the course of employment when he died.

 Focusing on the fatal claim petition only, we begin by observing that employers may have legitimate reasons for terminating an employee that are unrelated to a potential workers' compensation claim. This case presents the larger policy question of whether the General Assembly intended employers to bear the risk of a compensable injury that may follow such termination and is a consequence of the termination decision, even when that consequence bears no relationship to employment responsibilities and does not occur until after the cessation of the employment relationship.

In *Krawchuk*, our Supreme Court confirmed the referee's determinations that the stress and exertion that ultimately caused that decedent's fatal heart attack arose from and were related to decedent's employment. Additionally, the decedent in that case was still employed when he suffered his fatal heart attack. In a sense, this case involves an employee whose fatal injury was causally related to his *unemployment* and the disconnection of his em-

ployment relationship. The medical evidence that the parties submitted indicates that the sole focus of the medical testimony related to whether the termination itself caused Decedent to suffer from stress that ultimately caused his fatal heart attack. There is no suggestion in the testimony that any stress at the work place was a contributing factor in Decedent's heart attack or precipitated his heart attack.

Although an injury that occurs in the workplace need not have a causal relationship to work activities, *Ruhl v. Workmen's Compensation Appeal Board (Mac–It Parts, Inc.)*, 148 Pa.Cmwlth. 294, 611 A.2d 327 (1992), *appeal denied*, 533 Pa. 620, 619 A.2d 701 (1993),[10] when an injury occurs off-premises, the relationship between an injury and employment activities must be more clear. The Supreme Court confirmed this notion by observing in *Krawchuk* that, "location should be, therefore, merely a factor for the [workers' compensation judge]" in considering whether an employee has sustained an injury "arising" in the course of employment and related to employment. *Krawchuk*, 497 Pa. at 124, 439 A.2d at 632.

 We conclude that where a work injury appears to bear no relationship to events associated with employment activities (regardless of whether a claimant typically engages in those activities as part of his job responsibilities or as an activity of daily living, such as the knee-crossing in *Ruhl*), but rather relates to a final act that is only work-related insofar as the event

ment, he would have been entitled to ongoing disability benefits for his work-related injury. For the purposes of those benefits, the WCJ's determination that Decedent worked for Employer on October 1, 2005 and January 30, 2006, appears to establish the closed period of benefits awarded for the (non-fatal) claim petition.

10. In *Ruhl*, a claimant injured his knee when he crossed his legs at work. This Court observed that the Act does not require an "injury" "to be 'purely associated with work' rather than a simple 'activity of daily living,' or that it stem from a fall or blow in order to be considered work-related." *Ruhl*, 611 A.2d at 330.

alters the employment relationship (such as the termination in this case), an injury associated with that final act does not arise in the course of employment. As the Supreme Court in *Davis* commented, the Act does not provide benefits to a claimant "merely because of the claimant's status as an employee." *Davis*, 561 Pa. at 473, 751 A.2d at 175.

■ This Court has described the expression "course of employment" to encompass injuries an employee sustains while on or off the employer's premises if the employee is acting in furtherance of his employer's business. *Workmen's Comp. Appeal Bd. (Slaugenhaupt) v. U.S. Steel Corp.*, 31 Pa.Cmwlth. 329, 376 A.2d 271, 273 (1977). Additionally, a claimant can establish that he was injured in the course of employment even if he was not furthering his employer's business when he is on his employer's premises, he is required to be on his employer's premises, and he sustains injuries because of some condition of the premises. *Id.* Under either qualification, the facts in this case do not support a finding that Decedent was in the course of employment.[11]

We do not read the Act as imposing on employers the risk of compensation for injuries that result from a decision to terminate an employee. Consequently, based upon the fact that Decedent sustained his fatal heart attack two days after he was terminated, and based upon the lack of any expert medical evidence indicating that a causal connection exists between his actual employment and the onset of his heart attack, we agree with the Board's and the WCJ's ultimate legal conclusions that Decedent did not sustain a work-related injury that would entitle Claimant to benefits for her fatal claim petition.

■ In summary, the WCJ's determination in Finding of Fact No. 2 that Employer terminated Decedent on January 28, 2006, is supported by substantial evidence, and the WCJ's reference in Finding of Fact No. 1 to January 30, 2006, while appearing to be in conflict with Finding of Fact No. 2, actually pertains to the claim petition for Decedent's work-related disability. Because there is no evidence in the record that could support a factual finding that Decedent's work activities, as compared to Employer's termination of Decedent, were causally related to his death, we affirm the Board's order.[12]

### ORDER

AND NOW, this 28th day of July, 2011, the order of the Workers' Compensation Appeal Board is affirmed.

### CONCURRING & DISSENTING OPINION BY Senior Judge FRIEDMAN.

I agree with the majority that, under *Panyko v. Workers' Compensation Appeal*

---

11. We observe also that the clear language of Section 301(c)(1) of the Act, 77 P.S. § 411(1), which requires only that a claimant establish that an alleged work-related injury occurred in the course of employment and is related to employment, does not preclude a claimant from seeking benefits for such an injury after the employment relationship has ceased.

12. Claimant also suggests that the WCJ should not regard January 28, 2006, as the date of termination because the timing of Employer's actions suggest that Employer sought to retaliate against Decedent because he had retained counsel and was planning to seek benefits for his disability. As Employer points out, Claimant did not raise a retaliation claim before the WCJ or the Board. Further, as Employer notes, the WCJ made credibility determinations in favor of Claimant and her lay witness, but nevertheless concluded that Decedent was not acting in the course of employment when he suffered his heart attack. Consequently, we will not consider the question of whether Employer acted in a retaliatory manner in terminating Decedent.

*Board (U.S.Airways)*, 585 Pa. 310, 322–323, 888 A.2d 724, 732 (2005), a claimant who suffers a purely physical injury, such as a heart attack, need not prove that the working conditions were abnormal to establish a compensable work injury. However, I disagree that B & L Ford/Chevrolet (Employer) ended the employment of David Little (Decedent) prior to January 30, 2006, and, thus, Janet Little (Claimant) could not prove that Decedent suffered a compensable fatal heart attack on January 30, 2006. (Majority Op. at 643–45.)

The workers' compensation judge (WCJ) in this case specifically found that Decedent "was employed by [Employer] . . . on January 30, 2006." (Findings of Fact, No. 1.) The majority states that this finding "suggests" that the WCJ found January 30, 2006, to be "a pertinent date for the purpose of establishing that an employment relationship existed." (Majority Op. at 643.) I submit that the finding is clear and unambiguous, not merely suggestive, that Employer employed Decedent on Monday, January 30, 2006.[1]

The WCJ also found that Decedent received a letter from Employer on Saturday, January 28, 2006, which "terminated the [Decedent's[2]] employment." (Findings of Fact, No. 2.) The WCJ did not include the effective date of the termination in this finding. Although the letter stated **Employer's** belief that Decedent voluntarily terminated his employment as of Friday, January 27, 2006, the WCJ did **not** adopt either the 27th or the 28th as

the effective date of the termination. Rather, the WCJ found that Decedent was still employed by Employer on Monday, January 30, 2006.[3]

Having established that the WCJ found that Decedent was employed by Employer on January 30, 2006, I shall address whether the WCJ erred in concluding that Decedent was not in the course of employment when he suffered a fatal heart attack on January 30, 2006.

An injury is sustained in the course of employment where the employee, whether on or off the employer's premises, is injured while actually engaged in the furtherance of the employer's business or affairs. *Workmen's Compensation Appeal Board (Slaugenhaupt) v. U.S. Steel Corporation*, 31 Pa.Cmwlth. 329, 376 A.2d 271, 273 (1977).

Here, Decedent received a letter from Employer on Saturday, January 28, 2006, setting forth Employer's belief that Decedent voluntarily terminated his employment because Decedent failed to provide a timely doctor's report about his ability to work. The letter invited Decedent to contact Employer's president or "Alice" if he had any questions regarding his employment. (*See* 1/27/06 Letter, Ex. C–3.) Thus, it is apparent that, when Decedent suffered a heart attack with the letter in his hand, he was considering his response to Employer's erroneous conclusion. Because the letter involved an unresolved personnel matter and invited a response, I

---

1. The majority negates this finding, stating that January 30, 2006, only represents the "date upon which disability benefits legally could end." (Majority Op. at 644.) However, the finding is that Decedent **was employed** by Employer on January 30, 2006. Thus, the date also represents the last day of Decedent's employment.

2. I note that the WCJ actually found that the letter terminated "Claimant's" employment. However, the WCJ frequently confused Claimant and Decedent in the decision.

3. To the degree there is a discrepancy between the WCJ's findings of fact regarding the last day of Decedent's employment, I submit that the case should be remanded for clarification.

conclude that Decedent was furthering Employer's affairs and, therefore, was in the course of his employment when he died.

Accordingly, I would reverse and remand this case to the WCAB for remand to the WCJ for consideration of the parties' medical evidence on causation.