# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brenda M. Reichert,                                :
                        Petitioner          :
                                                   :
                v.                                 :        No. 2080 C.D. 2014
                                                   :        SUBMITTED:  May 22, 2015
Workers' Compensation Appeal            :
Board (Foxdale Village),                         :
                        Respondent        :


BEFORE:     HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                          **FILED:  September 10, 2015**


        Brenda M. Reichert (Claimant) petitions this court for review of the
order of the Workers' Compensation Appeal Board (Board) affirming the decision
of the Workers' Compensation Judge (WCJ) denying Claimant's claim petition.
For the reasons that follow, we affirm.

        Claimant filed her petition on September 19, 2012, alleging that on
February 17, 2012, she sustained a work-related injury in the nature of a thoracic
strain and aggravation of a pre-existing degenerative condition and thoracic spine
while in the course and scope of her employment with Foxdale Village
(Employer).  Employer filed a timely answer denying Claimant's allegations and

asserting that, "Claimant was not working for us on February 17, 2012." Defendant's Answer to Claim Petition, Reproduced Record (R.R.) at 8a.

Before the WCJ, Claimant testified that she had been working for nearly seventeen years for Employer as a certified nurse's assistant (CNA), until her family physician, Dr. Jeffrey H. Baker, took her out of work in August 2011, for back pain unrelated to any work injury. Claimant testified that Dr. Baker referred her to a back specialist, Dr. Evans, for further treatment. In January 2012, Claimant felt that she was able to return to work and informed Dr. Evans at her appointment on January 9, 2012. Dr. Evans recommended that Claimant see Dr. Baker for a release to return to work. Claimant contacted Employer's then-Human Resource Director, Kurt Sayers, and informed him that she would be able to return to work "part time and light duty" following her appointment with Dr. Baker scheduled for January 20, 2012. Hearing of November 9, 2012, Notes of Testimony (N.T.), at 11. Claimant testified that Mr. Sayers then gave her a letter for Dr. Baker, which she took with her to her appointment.[1] Claimant stated that

---

[1] Mr. Sayers' letter of January 19, 2012, states in part:

> [Y]ou have been out on medical leave since August 2011. Recently, you indicated you (sic) that you may be able to return to work soon, although you were not sure if you could return to your full-time position. Please provide me with an update as soon as possible with regard to a definitive return to work date. If you would like to return on a limited basis, please provide us with your proposals and we will review against our needs to determine whether a part-time schedule can be arranged.
>
> We also write because, when you are able to return, you must have your doctor provide a fitness for duty certification. We enclose a copy of your job description. Please ensure your doctor's certification addresses whether you are able to perform the essential functions of your job, including meeting the physical requirements of the position, and whether you can work without posing a direct threat to yourself or others, including our residents.

Hearing of November 9, 2012, Claimant's Exhibit C-3.

Dr. Baker contacted Employer for clarification of the letter, after which he recommended that Claimant complete a functional capacity evaluation (FCE). Claimant testified she informed Employer that same day and was told by Mr. Sayers that Employer would pay for the test. Claimant completed the FCE on February 17, 2012, and testified that she "was in so much pain at the end of the test" that she "could hardly move that whole weekend." *Id.* N.T. at 18, 27. Claimant rated her level of pain as a "ten" when she first went off work in August, down to a "two or three" by January when she spoke with Employer about returning to work, and then up to a "[t]en plus" after undergoing the FCE. *Id.* at 17. Claimant testified that after she took the FCE, she did not feel that she could return to work even on a limited basis.

Dr. Jeffrey H. Baker testified by deposition that he had been treating Claimant "since the middle of 2011 for a musculoskeletal problem on the right side of her chest, or thorax area." Deposition of Dr. Baker, January 29, 2013, at 9. Dr. Baker testified that when Claimant came in for an appointment in January 2012, she had a letter from Employer stating that in order for Claimant to return to work, Dr. Baker would need to provide a fitness for duty certification, and enclosed her job description. Dr. Baker testified that because she had been out of work for so long, he did not "feel comfortable" certifying Claimant's return to work without referring her for an FCE. *Id.* at 11. After receiving the results of Claimant's FCE, Dr. Baker testified that, "[a]t that time, 28 of March [2012], I felt because the functional capacity test said she could tolerate work that I thought she should be able to go back." *Id.* at 15.

3

The WCJ determined that *Moberg v. Workers' Compensation Appeal Board (Twining Village),* 995 A.2d 385 (Pa. Cmwlth. 2010),[2] was controlling, and concluded that "having a functional capacity evaluation as a pre-condition of return to work following a period of non-work-related disability is not in the course and scope of employment under the Act," and thus, dismissed Claimant's claim petition. WCJ's Decision, July 15, 2013, at 2. Claimant appealed the WCJ's decision to the Board, which affirmed. The Board agreed with the WCJ and concluded that *Moberg* indeed controlled, and that it "stands for the proposition that merely satisfying the prerequisites of working for the employer, does not place a claimant in the course and scope of employment." Board's Opinion, November 4, 2014, at 3. The Board further concluded that Claimant "could not establish she sustained her injury while 'actually engaged in the furtherance of the business or affairs' of [Employer]." *Id.* at 3.

---

[2] In *Moberg,* claimant filed a claim petition alleging she sustained an injury in the course and scope of her employment with employer. Claimant asserted that as a condition of employment, she was required to undergo a tuberculin test. After undergoing the test, she had an adverse reaction, fainted and struck her head. At the ensuing hearing before the WCJ, employer's witness testified that employer only sent people for the test that it considered successful applicants it intended to hire and while it ultimately did hire claimant, she explained that an applicant had to complete the two-step tuberculin test in order to be considered hired. Claimant testified that prior to the day of the test, she was told that she was hired but that she had to undergo the test before she could start working and that she believed she also signed an employment agreement with employer. The WCJ, affirmed by the Board, concluded that claimant had not established that there was an employer/employee relationship at the time she sustained her injury, finding that claimant was still going through the hiring process. On appeal to this court, we concluded that the evidence credited by the WCJ supported the finding that claimant was not an employee but rather an applicant going through the application process. The fact that claimant was eventually hired by employer was not dispositive because she may not have been hired had she failed any of employer's other requirements for employment, which we explained were not just mere formalities but pre-requisites to hire.

On appeal to this court, Claimant contends that the Board erred in finding that she was not in the course and scope of her employment[3] at the time of her injury. Claimant asserts that *Moberg* is distinguishable and thus does not control the outcome of this case.

In a claim petition, the burden of proving all of the necessary elements to support an award rests with the claimant. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy),* 634 A.2d 592 (Pa. 1993). The claimant must prove that her injury was sustained during the course and scope of her employment and is causally related thereto. *U.S. Airways v. Workers' Comp. Appeal Bd. (Dixon),* 764 A.2d 635, 640 (Pa. Cmwlth. 2000). Furthermore, a claimant must prove that an employer/employee relationship exists in order to be entitled to benefits under the Workers' Compensation Act[4] ("Act"). *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer),* 762 A.2d 328, 330 (Pa. 2000). Whether an employer/employee relationship exists is a question of law over which we have plenary review. *Id.* at 331.

Claimant avers that while *Moberg* may stand for the proposition that merely satisfying the prerequisites of working for an employer does not place a claimant in the course and scope of employment, both the WCJ and the Board failed to note a critical distinction in her case. Specifically, Claimant argues that unlike the claimant in *Moberg* who was an applicant for employment at the time of her injury, she (Claimant) was an employee, albeit, an employee who was out on

---

[3] Pursuant to Section 301(c) of the Workers' Compensation Act ("Act"), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1), the "term 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition . . . arising in the course of his employment and related thereto . . ."

[4] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1 – 1041.4, 2501-2708.

long-term medical disability at the time of the alleged work-related injury, who was "simply following [Employer's] instructions to return to employment by having a mandated physical evaluation (FCE)." Claimant's Brief at 9. Claimant asserts that her situation is more analogous to the facts in *Taylor v. Ewing,* 70 A.2d 456 (Pa. Super. 1950), in which the employer therein directed his employee to go to his home and mow his lawn and while mowing the lawn, the employee was injured. Although grass cutting was not part of his regular duties at the car dealership, the court reasoned that "[i]f it had not been for claimant's employment in [employer's] business, he would not have been in the place where he was injured, at which time he was working under the direction and control of [employer] and in consequence of the relationship of employer and employe." *Id.* at 457. Likewise, Claimant asserts that she only participated in the activity which injured her (the FCE) "because the employer required that her physician complete a Fitness for Duties Certification and Dr. Baker felt that he could not do so without an FCE." Claimant's Brief at 14. Thus, she continues, "'but for' her job with [Employer] she would not have been in a position to participate in the FCE." *Id.* (Emphasis omitted). Claimant argues therefore, that having established that she was injured during the course and scope of her employment, she is entitled to workers' compensation benefits. We disagree.

Section 301(c)(1) of the Act, states in pertinent part:

The term "injury arising in the course of his employment," as used in this article, . . . shall include all . . . injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether on the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises . . . sustained by the employe, who, though not so engaged, is injured upon the premises

6

> occupied by or under the control of the employer, . . . the employe's presence thereon being required by the nature of his employment.

77 P.S. § 411(1). Here, there is no dispute that Claimant was neither injured on Employer's premises nor on premises occupied by it or controlled by it. Nor does Claimant appear to argue that she was actually engaged in Employer's business when she participated in the FCE.[5] Rather, it appears that Claimant is arguing that in order to determine whether she was in the course of employment, the proper question is whether Employer ordered or directed the conduct involved. *Taylor,* 70 A.2d 456, 457 (Pa. Super. 1950) [relying on *Krchmar v. Oakland Beach Company,* 38 A.2d 710, 712 (Pa. Super. 1944)]. In other words, even though she was not injured on Employer's premises and she was not furthering Employer's business, because "[Employer] mandated the FCE for her to return to work" and she was injured while participating in the FCE, she was in the "course of employment" and thus entitled to an award of benefits. Claimant's Brief at 13.

Here, while both the WCJ and the Board recognized that an employment relationship existed prior to the commencement of Claimant's non-work-related disability, case law also makes clear that "an employment relationship must be maintained by the parties." *Moberg,* 995 A.2d 385, 390 (citation omitted). For example, in *Hepp v. Workmen's Compensation Appeal Board (B.P. Oil Company),* 447 A.2d 337, 339 (Pa. Cmwlth. 1982) (emphasis

---

[5] An employee not engaged in the furtherance of the business or affairs of the employer must satisfy three conditions under the Act in order for her injury to be in the course of employment: 1) the injury occurred **on** employer's premises, 2) the employee's presence thereon was required by the nature of her employment, and 3) the injury was caused by the condition of the premises or by the operation of the employer's business thereon. *Dana Corp. v. Workmen's Comp. Appeal Bd. (Gearhart),* 548 A.2d 669, 670 (Pa. Cmwlth. 1988) (emphasis added).

omitted), we determined that claimant was not injured while furthering his employer's business and was not acting in the course and scope of his employment because he was injured "following receipt of notice that he was no longer employed . . . ." Then, in *Little v. Workers' Compensation Appeal Board (B&L Ford/Chevrolet),* 23 A.3d 637, 644-45 (Pa. Cmwlth. 2011), we held that an injury that "relates to a final act that is only work-related insofar as the event alters the employment relationship (such as the termination in this case), . . . does not arise in the course of employment." Moreover, just as the furloughed employee's employment relationship is held in abeyance due to the employer's lack of funds or work, *Kelly v. Workers' Compensation Appeal Board (US Airways Group, Inc.),* 992 A.2d 845, 853 (Pa. 2010), the employer-employee relationship between a claimant out on non-work related long term disability and his or her employer is held in abeyance due to his or her non-work related long-term disability. However, whether a claimant out on non-work disability maintains an employment relationship into the future depends, in certain cases such as this one, on whether the claimant can successfully satisfy Employer's requirements for return to employment.

In the matter *sub judice,* Claimant, who had been out on non-work related long-term disability for a prolonged period of time, may have indicated her desire to return to work, but it was not a foregone conclusion that Employer would be able to provide her with employment, either in her former position or in an alternative position if there are restrictions which may attach due to the medical condition for which she was absent from work. In such a case, as with new applicants, the employer may require the individual to fulfill certain requirements before becoming employed and returning to work, such as obtaining a fitness for

8

duty certification, as did Employer herein, and while these requirements are managerial decisions over which the individual has no control, we do not believe that fulfilling those requirements as a pre-condition of renewed employment places the Claimant in the course and scope of employment. Requiring a claimant who has been out of work on medical leave for a significant period of time to obtain a fitness for duty certification before returning to work is not the same as an employer directing his employee to go to employer's home and mow his lawn, as occurred in *Taylor*. Significantly, Claimant did not have to take the FCE if she did not wish to return to work. Indeed, as Employer points out, it required only that she obtain a fitness for duty certification from her primary care physician and that it was her doctor who ordered the FCE because he was uncomfortable certifying her without one. This does not mean that Employer either directed or mandated Claimant's participation in the FCE, but only that it did have certain prerequisites for employment that Claimant needed to complete in order to return to work. Moreover, the fact that Claimant was an employee prior to commencing her non-work long term disability is not dispositive, because Claimant may not have returned to employment if she was unable to complete any of Employer's other pre-requisites for employment.[6] Hence, an injury that arises while participating in a pre-requisite for employment is only work-related insofar as the event has the potential to alter the employment relationship by allowing the Claimant to return to employment, but it does not arise in the course of employment.

---

[6] In *Moberg*, 995 A.2d 385, 390 (footnote omitted), we noted that claimant "may have ended up not getting the job had she failed the tuberculin test, the drug test, or unsuccessfully completed any of Employer's other requirements for employment." *See also,* Employer's January 19, 2012 Letter to Claimant from its then-Human Resource Director, Kurt Sayers, outlining those requirements. Claimant's Exhibit C-3, n. 1, *infra.*

Accordingly, we affirm the order of the Board.


                                          _____

                                          **BONNIE BRIGANCE LEADBETTER,**
                                          Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brenda M. Reichert,            :
             Petitioner      :
                             :
           v.              :   No. 2080 C.D. 2014
                             :
Workers' Compensation Appeal   :
Board (Foxdale Village),        :
             Respondent   :

## O R D E R

AND NOW, this 10th day of September, 2015, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby AFFIRMED.

 

                          _____

                          **BONNIE BRIGANCE LEADBETTER,**
                          Judge